Wayne Kenneth DeLONG, Petitioner,

v.

Charles E. THOMPSON, Warden, Mecklenburg Correctional Center, Respondent.

Civ. A. No. 3:91CV00158.

United States District Court, E.D. Virginia, Richmond Division.

Sept. 4, 1991.

Memorandum and Order On Motion to Alter or Amend Dec. 11, 1991.

---

Latham & Watkins, Jana L. Gill, Coudert Bros., Mitchell Rogovin, Randal S. Milch, Donovan, Leisure, Rogovin, Huge & Schiller, Arthur F. Sampson, III, Washington, D.C., for petitioner.

Donald Richard Curry, Office of Atty. Gen., Richmond, Va., for respondent.

## MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before the Court on Respondent's motion to dismiss the petition for a writ of habeas corpus. Petitioner, a Virginia state prisoner, challenges a conviction in the Circuit Court for the City of Richmond of capital murder for killing a police officer. Jurisdiction is appropriate pursuant to 28 U.S.C. § 2254.

On March 27, 1991, this Court entered an order whereby petitioner's application for a stay of execution was provisionally denied. Thereafter, the Court received and reviewed both the respondent's motion to dismiss and petitioner's memorandum in opposition to respondent's motion. The Court found that the issues raised by petitioner were not frivolous and deserved fair and earnest consideration by the Court. Consequently, the Court granted petitioner's application for a stay of the execution that was scheduled for May 1, 1991. The state court order sentencing petitioner to death was therefore stayed pending this Court's resolution of the matter before it or until further order of the Court.

## I

On June 15, 1986, petitioner drove to Richmond from Virginia Beach. At that time he apparently had, in his possession, a

.45 caliber handgun. He spent most of the day drinking beer with friends at several Richmond bars. Sometime during the day, petitioner's car was stopped by a Richmond city detective. Petitioner allegedly informed his companions in the car that "[a] mother-fucking cop is pulling me over" and that he was "going to have to shoot this nigger." *See* Brief in Support of Respondent's Motion to Dismiss at 1. When Detective George Ronald Taylor approached the car, petitioner fired a shot into the officer's chest, perforating the officer's esophagus and his aorta. *Id.*

Petitioner fled the scene but was apprehended shortly thereafter when his automobile was stopped by Richmond police officers on the interstate highway east of Richmond. *Id.* at 2. Officer Taylor was pronounced dead several hours later.

After a three-day jury trial in the Circuit Court of the City of Richmond, the jury convicted petitioner of the capital murder of a law enforcement officer and of using a firearm in the commission of that offense. Petitioner received a four year prison sentence for the firearm offense and a sentence of death on the capital murder conviction. On December 18, 1986, the trial court imposed both sentences in accordance with the jury's verdicts.

Petitioner thereafter appealed to the Virginia Supreme Court which affirmed petitioner's sentences. *See Delong v. Commonwealth*, 234 Va. 357, 362 S.E.2d 669 (1987), *cert. denied, Delong v. Virginia*, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 263 (1988).

Subsequently, petitioner filed a petition for a writ of habeas corpus in the Circuit Court of the City of Richmond. On February 7, 1989, the Circuit Court dismissed the majority of petitioner's claims and directed that an evidentiary hearing be conducted with regard to certain of petitioner's claims of ineffective assistance of counsel at the penalty stage of the trial. The hearing was held on June 21 and 22, 1989.

At the conclusion of the hearing, the parties were directed to submit proposed findings of fact and conclusions of law. By order dated November 3, 1989, the Circuit Court expressly adopted the respondent's proposed findings of fact and conclusions of law, rejected petitioner's claims of ineffective assistance of counsel, and dismissed the amended habeas petition in its entirety.

Petitioner next appealed to the Virginia Supreme Court. On July 10, 1990, the Court refused petitioner's petition for appeal and expressly found that a number of his claims were "dismissed for reasons of procedural default." The Supreme Court of the United States denied certiorari review. *See Delong v. Thompson,* — U.S. —, 111 S.Ct. 571, 112 L.Ed.2d 578 (1990). Consequently, petitioner, asserting several claims, filed a petition for a writ of habeas corpus in this Court. Each claim will be reviewed *seriatim.*

Petitioner's claims are as follows:

1) Community prejudice, arising immediately after the arrest, infected the trial thereby depriving petitioner of both an impartial jury and due process of law;

2) Petitioner was denied the effective assistance of counsel in violation of his Sixth Amendment right to counsel because his trial counsel did not properly pursue a motion for a change of venue;

3) Petitioner was denied the effective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel failed to conduct an adequate voir dire;

4) Petitioner was denied the effective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel failed to make an adequate and independent investigation of his case;

5) Petitioner was denied the effective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel failed to investigate, develop and present mitigating family evidence;

6) Petitioner was denied the effective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel failed to investigate, develop and present mitigation evidence based on petitioner's medical background, including his mental health;

7) Petitioner was denied the effective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel failed to investigate, develop and present mitigating evidence based on petitioner's prior conduct and also failed to address the Commonwealth's alleged aggravating factors;

8) Petitioner was denied the effective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel failed to investigate, develop and present mitigating evidence relating to petitioner's employment history;

9) Petitioner was denied the effective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel failed to make timely objections at trial;

10) Petitioner was denied the effective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel failed to prepare, proffer, and argue adequate jury instructions;

11) Petitioner was denied the effective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel failed to develop a responsible legal strategy for the sentencing phase of the trial;

12) Petitioner was denied due process of law because the trial court admitted improper evidence of past crimes during the penalty phase of the trial;

13) Petitioner was denied due process of law because the trial court committed error in impaneling the jury;

14) Petitioner was denied due process of law because the trial court permitted misconduct by the Commonwealth in violation of *Brady v. Maryland;*

15) A trial witness' pre-trial identification of petitioner was prejudicial and violative of petitioner's Fourteenth Amendment rights;

16) Petitioner was denied due process of law because the Commonwealth failed to establish all of the elements of capital murder;

17) Petitioner was denied due process of law because the trial court allowed improper closing arguments by the Commonwealth;

18) Petitioner was denied due process of law because the trial court failed to properly instruct the jury;

19) The jury instructions were inherently confusing, illogical, and allowed for the imposition of the death penalty in an arbitrary and capricious manner in violation of petitioner's Eighth and Fourteenth Amendment rights;

20) Virginia's capital murder statute and sentencing procedures are unconstitutional on their face and as applied, under the Eighth and Fourteenth Amendments;

21) The present Virginia death penalty procedures have resulted in the arbitrary and discriminatory application of the death penalty based on the sex and financial status of the offender and petitioner's death sentence was imposed pursuant to this discriminatory pattern and practice in violation of the Eighth and Fourteenth Amendments;

22) Imposition of the death penalty in Virginia is unconstitutional because of the Virginia Supreme Court's failure to engage in adequate review of death penalty decisions;

23) Imposition of the death sentence in this case would be excessive or disproportionate to the penalty imposed in similar cases;

24) Trial counsel were constitutionally ineffective because they failed to provide effective assistance on appeal and to adequately raise and preserve issues for appeal;

25) The Virginia Supreme Court's failure to engage in meaningful proportionality review is unconstitutional as applied to petitioner.

II

Petitioner's claim that community prejudice infected the trial and thereby deprived petitioner of an impartial jury and due process of law

Petitioner contends that the sensation surrounding the murder of Detective Taylor and the controversy of another case

deprived petitioner of a fair trial. According to petitioner, the media coverage of both tragedies made it impossible for petitioner to receive a fair trial in the City of Richmond.

Several months earlier, an individual had been found guilty of the murder of a Henrico County, Virginia police officer. Unlike petitioner, the person convicted of the crime received a sentence of life in prison. This sentence of life imprisonment for the murder of a police officer resulted in public outrage which was noted in the editorial pages and letters in the major Richmond-area newspapers. Petitioner contends that, in light of this apparently public sentiment, a jury composed of Richmond citizens was predisposed toward returning a sentence of death in his case. Thus, he maintains, he was deprived of a fair trial and an impartial jury.

The Virginia habeas court found that petitioner had not raised this claim on direct appeal and, therefore, had procedurally defaulted. Consequently, petitioner was barred from raising this claim on collateral appeal.

■ Generally, petitioner must initially present his habeas claims to the highest state court before seeking review of the claims in federal court. *See* 28 U.S.C. § 2254(b); *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). This exhaustion requirement may be satisfied by either direct appeal or a collateral proceeding. *Id.* Exhaustion is not required, however, if 1) it is waived by the state; 2) state court remedies are ineffective; or 3) state court remedies are unavailable. A petition containing both exhausted and un-exhausted claims must be dismissed without prejudice unless one of the exceptions applies. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

■ In the matter at hand, petitioner failed to exhaust his state court remedy for this claim. Under the law of Virginia, however, he is now procedurally barred from presenting this claim to the Virginia Su-

preme Court.[1] As state court remedies are no longer available, this claim is excepted from the exhaustion requirement. *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (federal courts should not require exhaustion of state court remedies when it would be futile). Nonetheless, the court must dismiss those claims which the state's highest court has held are procedurally barred or where the claims are not exhausted but would be found to be procedurally barred if the petitioner were forced to return to the state court system. *Bassette v. Thompson,* 915 F.2d 932 (4th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991); *Whitley v. Bair,* 802 F.2d 1487 (4th Cir.1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987).

■ While the *petition* need not be dismissed, the Court must dismiss the unexhausted or procedurally defaulted claims. *Whitley v. Bair,* 802 F.2d 1487 (4th Cir. 1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987) (failure to raise habeas claims on appeal to the Virginia Supreme Court creates a procedural bar to federal review). A claim is defaulted and thus, this Court is precluded from reviewing it where the petitioner could have raised the claim in the state court system but failed to do so. VA.CODE ANN. § 8.01–654(B)(2); *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975); *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

Similarly, a claim is procedurally barred from review in the federal court where the last state court to render a judgment clearly and unequivocally states that its judgment rests on the procedural bar. *Teague v. Lane,* 109 S.Ct. at 1068. Consequently, the claims are procedurally barred from federal review unless the petitioner can demonstrate valid cause for the default and prejudice arising from it. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53

---

**1.** Petitioner defaulted on this claim when he failed to raise it on appeal and again in his Virginia habeas petition. VA.CODE ANN.

§ 8.01–654(B)(2) (1984). *See Clanton v. Muncy,* 845 F.2d 1238 (4th Cir.), *cert. denied,* 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988).

L.Ed.2d 594 (1977). In the case before the Court, petitioner has made no attempt to advance any valid cause for, or prejudice from, his procedural default. Therefore, this claim is procedurally barred and will be dismissed.[2]

## III

### Petitioner's ineffective assistance claims

Petitioner contends that there were several instances in which trial counsel was constitutionally deficient in the representation of petitioner. Hence, according to petitioner, he was deprived of the effective assistance of counsel in violation of his sixth amendment rights. Respondent argues, on the other hand, that the majority of the claims are procedurally barred from federal review while the others are simply without merit.

■■■ Although it is true that factual determinations made by a state court are presumptively correct,[3] state court findings that pertain to ineffective assistance of counsel claims are not entitled to the same presumption of correctness because such claims involve mixed questions of law and fact. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). In order to determine ineffectiveness claims, the federal court need only defer to the underlying findings of historical fact made by the state court. *Id.* A state court conclusion, however, that counsel rendered effective assistance "is not a finding of fact binding on the federal courts" under § 2254(d). *Id.* Thus, this Court must individually analyze each ineffective assistance of counsel claim and reach its own conclusion of law.

■■■ In order to succeed on an ineffectiveness claim, petitioner is required to satisfy both elements of the two-pronged test set forth by the Supreme Court in *Strickland v. Washington.* First, petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at

687–91, 104 S.Ct. at 2064–66. Next, petitioner must establish that he was prejudiced by counsel's deficient representation. *Id.* To satisfy this prejudice element, petitioner must prove that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694–95, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case. *Id.* at 694, 104 S.Ct. at 2068.

■■■ An ineffective assistance of counsel claim is especially important as it pertains to claims that are procedurally barred. The Supreme Court of the United States has held that counsel's constitutionally ineffective assistance may indeed constitute cause for a procedural default. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Nevertheless, petitioner is required to establish that he or she was indeed prejudiced by the procedural default. *Strickland,* 466 U.S. at 691–96, 104 S.Ct. at 2066–69.

A. Petitioner's claim that he was denied effective assistance of counsel because trial counsel did not pursue a change of venue

Petitioner asserts that trial counsel were ineffective in that they did not vigorously pursue a motion for a change of venue even though there was a great deal of sensationalism surrounding the murder of Detective Taylor and petitioner's alleged involvement in the crime. It is petitioner's further contention that trial counsel were constitutionally deficient because of a failure to bring to the trial court's attention the issue of the "heated public outcry over a local jury's decision" to sentence another individual convicted of murdering a police officer to life imprisonment rather than impose the death penalty.

According to petitioner, the trial court asked that counsel raise the change of venue issue again at the completion of the jury

---

2. This claim is also analyzed under an ineffective assistance of counsel theory at III(A), *supra.*

3. 28 U.S.C. § 2254(d); *accord Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

voir dire. This was not done and petitioner maintains that counsel provided ineffective assistance by virtue of this failure.

▆▆▆ The state habeas court rejected the substantive claim e.g., that community prejudice infected the trial on the grounds that it was barred by *Slayton v. Parrigan* [4] because petitioner did not raise it at trial or on direct appeal. It is well-recognized, however, that an ineffectiveness claim is an exception to claims ostensibly barred because of a procedural default. *Slayton v. Parrigan*, 215 Va. 27, 205 S.E.2d 680. Nonetheless, the ineffectiveness claim must be raised and exhausted in the state habeas proceeding or federal review is otherwise barred. *Whitley v. Bair*, 802 F.2d 1487 (4th Cir.1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987). This claim was raised in the state habeas proceeding and summarily rejected by the state court on the grounds advanced by the Commonwealth—that trial counsel's actions did not constitute ineffective assistance. As earlier stated, this Court is not bound by the state court findings and should analyze this claim and reach its own determination as to whether counsels' representation was constitutionally deficient.

▆▆▆ In the instant case, trial counsel submitted several newspaper articles that referred to petitioner and/or various aspects of the case. "To show that he was denied a fair or an impartial jury due to adverse pre-trial publicity, a petitioner must ordinarily demonstrate an actual, identifiable prejudice attributable to that publicity on the part of members of his jury." *Hargrave v. Landon*, 584 F.Supp. 302, 305 (E.D.Va.1984) (citing *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961)).

Moreover, the trial court is generally given wide discretion in conducting voir dire in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias. *Mu'Min v. Virginia*, —— U.S. ——, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991), *reh. denied.* The determinative is-sue is not whether a juror has been exposed to pretrial publicity, but whether he "can lay aside his impression or opinion and render a verdict based upon the evidence presented in court." *Briley v. Commonwealth*, 221 Va. 532, 538, 273 S.E.2d 48, 52 (1980).

Further, trial counsel moved for a change of venue; the motion was denied by the court. Petitioner attempts to establish that counsel were ineffective because they did not renew the motion upon the completion of the voir dire of the veniremen.

When the trial court denied the change of venue motion, it ruled that if the jury selection process demonstrated any evidence to support such an action, trial counsel could renew the motion at that point. *See* Trial Transcript, 10–6–86 at 13. A review of the record indicates that trial counsel elected not to renew the motion. Under the *Strickland* analysis, the Court must indulge a "strong presumption" that counsel's failure to renew the motion was the product of sound trial strategy and the Court must evaluate the "reasonableness of counsel's performance ... from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is *highly deferential*." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (emphasis added). Accordingly, petitioner's claim will be dismissed.

B. Petitioner's claim he was denied effective assistance of counsel because trial counsel did not conduct an adequate voir dire

Petitioner asserts that he was denied the effective assistance of counsel in that trial counsel conducted an inadequate voir dire of the veniremen. According to petitioner, counsel were constitutionally deficient in their representation because they neglected to question potential jurors about their predisposition to impose the death penalty or their inability or unwillingness to follow

---

**4.** 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied sub nom., Parrigan v. Paderick,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975).

the applicable principles of law in considering evidence in mitigation.

Likewise, it is petitioner's contention that trial counsel were ineffective because they did not attempt to rehabilitate potential jurors who allegedly expressed reluctance to impose the death penalty and were, therefore, excluded from the jury. Similarly, petitioner maintains that he received ineffective assistance because his attorneys did not individually question the prospective jurors as to what they knew or thought about petitioner or the crime. Further, petitioner claims that counsel were ineffective because they did not conduct an adequate voir dire of each individual prospective juror concerning each juror's possible racial bias.

■ This claim is likewise without merit as it has been held that jury selection is particularly within counsel's judgment and expertise. *Anderson v. Peyton,* 209 Va. 798, 800, 167 S.E.2d 111, 112–113 (1969). Additionally, petitioner has not demonstrated that the jurors in question could actually have been rehabilitated. *See Clanton v. Blair,* 619 F.Supp. 1491, 1502–1503 (E.D.Va.1985). It has been held that a juror *must* be excused when his or her views would prevent or substantially impair the performance of his or her duties as a juror in accordance with the instructions and his or her oath. *Wainwright v. Witt,* 469 U.S. 810, 105 S.Ct. 70, 83 L.Ed.2d 20 (1985); *accord Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

■ Further, the question of a juror's impartiality is "plainly one of historical fact" and a state court's finding on this matter is entitled to a presumption of correctness in federal habeas review under 28 U.S.C. § 2254(d). *See Patton v. Yount,* 467 U.S. 1025, 1036–37, 104 S.Ct. 2885, 2891–92, 81 L.Ed.2d 847 (1984). Both trial and appellate court findings are entitled to such deference. *See, e.g., Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (per curiam). Consequently, the trial court's determination of a prospective juror's ability to serve should be upheld unless there is no fair support in the record for the court's ruling. *Boggs v.*

*Bair,* 892 F.2d 1193, 1201–02 (4th Cir.1989), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990); *Briley v. Bass,* 750 F.2d 1238, 1246–47 (4th Cir.1984). It is the finding of the Court that there is fair support in the record for the trial court's determination that the veniremen excused could not be impartial as required.

■ For example, a prospective juror was asked by the court if he would be able to impose the death penalty. The prospective juror unequivocally responded in the negative. *See* Transcript 11–5–86 at 166. The court then asked if he could impose the death penalty "[u]nder any circumstances." Again, the response was in the negative. *Id.* at 167.

Next, another prospective juror was excused when she too swore that she was unable to impose the death penalty. The colloquy was as follows:

> The Court: Let me ask you this, [Ms. Juror]. There may come a time in this case where you have to consider the death penalty. Can you impose the death penalty in a proper case after hearing everything and you deem that it is proper?
>
> The juror: No, I can't.
>
> The Court: Can you think of any situation wherein you think you could?
>
> The juror: No.

Transcript 11–5–86 at 274.

Similarly, another prospective juror was excused when he stated that he would be unable to impose the death penalty. The following exchange occurred between the prospective juror and the court:

> The Court: There may be a time, [Mr. Juror], in this case, when you have to consider imposing the death penalty. Could you impose the death penalty in a proper case?
>
> The juror: No, sir.
>
> The Court: Under any circumstances?
>
> The juror: No, sir.
>
> The Court: You can't think of any circumstances which you would impose the death penalty; is that what you are telling me?

The juror: I don't believe in the death penalty.

Transcript 11–5–86 at 302.

Likewise, yet another prospective juror was excused when she indicated that she could not consider imposing the death penalty:

The Court: There may be a time, [Ms. Juror], when you must consider imposing the death penalty in this case. Could you impose the death penalty in a proper case?

The Juror: I don't know.

The Court: Ma'am?

The Juror: I do not know about that.

The Court: I am having trouble hearing you?

The Juror: I said, I do not know about that.

The Court: You don't know about that?

The Juror: No.

The Court: Well, you are going to have to sort of give us some idea as to whether or not you could sit as a juror and the law says that you are to consider possibly in this case the death penalty or life imprisonment. If it is a proper case for that, could you impose the death penalty on Mr. Delong?

The Juror: No, sir. I could not do that.

The Court: You couldn't do that. Under any circumstances?

The Juror: No.

The Court: Gentlemen, do you want to go any further?

[Petitioner's counsel]: No, Your Honor.

Transcript 11–5–86 at 311–12.

Finally, the last prospective juror who was excused also established, to the satisfaction of this Court, that he was unable to impose the death penalty. The court inquired as to whether the prospective juror could impose the death penalty in a proper case. Transcript 11–5–86 at 315. The prospective juror answered "No." *Id.* The court then inquired further:

The Court: [Mr. Juror], I don't mean this case. I mean in any case.

The Juror: No, sir.

The Court: You can't think of any situation wherein you could deliver the death penalty?

The Juror: No.

The Court: Any questions?

[Commonwealth's Attorney]: No questions, Your Honor.

[Petitioner's counsel]: No questions, no, sir.

Transcript 11–5–86 at 315.

In light of the record adduced, the Court finds there was fair support in the record for the trial court's determination that the veniremen excused could not be impartial as required. As a result, petitioner's trial counsel were not ineffective for failing to attempt a rehabilitation of the excused veniremen. Consequently, petitioner's claim must fail.

■■■ Finally, contrary to petitioner's assertions, questions about racial bias are not *mandated* by *Turner v. Murray*[5], the case relied upon by petitioner. In *Turner*, the Supreme Court held that "a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." 476 U.S. at 36–37, 106 S.Ct. at 1688–89. The Court further noted, however, that:

[w]hether such a concern is purely chimerical or not is a decision we leave up to a capital defendant's counsel. Should defendant's counsel decline to request voir dire on the subject of racial prejudice, we in no way require or suggest that the judge broach the topic *sua sponte.*

476 U.S. at 37 n. 10, 106 S.Ct. at 1688 n. 10.

Hence, petitioner's claim will be dismissed.

C. Petitioner's claim that he was denied effective assistance of counsel because trial counsel failed to investigate, develop and present mitigation evidence.

■■■ The state habeas court held a two-day evidentiary hearing on this claim and found that counsel were not ineffective in their attempt to develop mitigation evi-

**5.** 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986).

dence. As stated earlier, however, this Court is not bound by the findings of the state court as they pertain to ineffectiveness claims. *See* 28 U.S.C. § 2254(d). On the other hand, the historical facts found by the state court are binding upon this Court. *Id.* The state court, in its order of November 3, 1989, adopted the findings of fact and conclusions of law submitted on behalf of respondent. The findings are as follows:

Trial counsel contacted petitioner's father and expressly solicited the father's assistance, and that of other family members and friends, in providing mitigating evidence. Petitioner's father contacted petitioner's counsel and informed him that "neither he nor any other members of the immediate family that now reside in Florida and elsewhere will be willing to come to [petitioner's] trial...." The father evinced some concern that "if they testify under oath that there will be many more bad things they say about [petitioner] than good things."

Counsel also obtained the names of past employers, friends, and other acquaintances of petitioner. Counsel could not remember whether they contacted all of the people whom petitioner had identified but did recollect contacting one individual who had knowledge of a specific act of violence committed by petitioner.

In addition, counsel interviewed several potential mitigation witnesses and contacted the attorney who represented petitioner when he received the second degree murder conviction. Under the *Strickland* standard, it is the finding of the Court that petitioner's counsel conducted a reasonable investigation which is all that is required by *Strickland. See Kimmelman v. Morrison*, 477 U.S. 365, 381–82, 106 S.Ct. 2574, 2586–87, 91 L.Ed.2d 305 (1986).

Further, petitioner takes issue with trial counsel's failure to object to the testimony from Dr. Norwood. Dr. Norwood's testimony, petitioner argues, formed the predicate for the jury's finding of "future dangerousness" which provided the basis for the death penalty imposed. This, according to petitioner, was directly contrary to the Supreme Court's decision in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

The petitioner in *Ake* was an indigent who had been tried for two counts of murder in the first degree, a crime which allowed for the imposition of the death penalty. The petitioner's behavior at the arraignment and in other pre-arraignment incidents was so odd that the trial judge, *sua sponte*, ordered petitioner to be examined by a psychiatrist. Based upon the psychiatric report, the court found petitioner to be mentally ill, in need of care and treatment, and incompetent to stand trial. Hence, petitioner was ordered committed to the state mental hospital.

Six weeks later, the court was informed that petitioner was competent to stand trial as long as he continued to receive an antipsychotic drug several times a day. The state then resumed its proceedings against petitioner.

Petitioner's counsel thereafter informed the court that petitioner would plead insanity as a defense. The counsel stated that it would be necessary for a psychiatrist to examine petitioner with respect to his mental condition at the time of the offense. As petitioner was an indigent, counsel requested that the court either arrange to have a psychiatrist perform the requested examination or to provide funds to allow the defense to arrange one. The trial judge denied the request.

Subsequently, petitioner was tried, convicted, and sentenced to death. Although petitioner's counsel questioned each of the psychiatrists who had examined petitioner at the state hospital, none testified about his mental condition at the time of the offense because none had examined him on that point. The state asked each of the psychiatrists whether he had performed or seen the results of the examination diagnosing petitioner's mental state at the time of the offense. Each psychiatrist replied in the negative. Thus, there was no expert testimony for either side on petitioner's sanity at the time of the offense.

At the close of the trial the jurors were instructed that petitioner could be found

not guilty by reason of insanity if he did not have the ability to distinguish between right and wrong at the time of the offense. Further, they were informed that petitioner was to be presumed sane at the time of the crime unless *he* presented evidence sufficient to raise a reasonable doubt about his sanity at that time. If he raised such a doubt, the jurors were informed, the burden of proof then shifted to the state to prove petitioner's sanity beyond a reasonable doubt. Petitioner's insanity defense was rejected and the jury returned a guilty verdict.

During the sentencing proceeding, the state requested the death penalty. No new evidence was presented and the state significantly relied upon the testimony of the state psychiatrists who had examined petitioner and who had testified that petitioner was a danger to society in order to establish his future dangerous behavior. Petitioner did not have an expert witness to rebut this damaging testimony or introduce, on his behalf, evidence in mitigation of his punishment. The jury then sentenced petitioner to death.

On appeal. petitioner argued that as an indigent, he should have been provided the services of a court-appointed psychiatrist. This argument was rejected and petitioner's conviction and sentence were affirmed. The Supreme Court granted *certiorari* and held:

> [W]hen a defendant has *made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial,* the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one.

*Ake v. Oklahoma,* 470 U.S. at 74, 105 S.Ct. at 1092 (emphasis added).

The Court recognized, however, that "[a] defendant's mental condition is not necessarily at issue in every criminal proceeding." *Id.* at 82, 105 S.Ct. at 1096. Thus, it was "unlikely that psychiatric assistance of the kind ... described would be of probable value in cases where it is not." *Id.*

In addition, the Court found that petitioner was "denied the means of presenting evidence to rebut the State's evidence of his future dangerousness." *Id.* at 83, 105 S.Ct. at 1096. According to the Court, "when the State presents psychiatric evidence of the [petitioner's] future dangerousness," there is "compelling interest in fair adjudication at the sentencing phase of a capital case." *Id.* Similarly, there is a "profound interest in assuring that [the State's] ultimate sanction is not erroneously imposed." *Id.* at 84, 105 S.Ct. at 1096. In its holding, the Court relied upon its reason in *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983). In *Estelle,* the Court upheld the practice of placing before the jury psychiatric testimony on the question of future dangerousness. This holding was based, in part,

> on the assumption that the factfinder would have before it both the views of the prosecutor's psychiatrists and the 'opposing views of the defendant's doctors' and would therefore be competent to 'uncover, recognize, and take due account of ... shortcomings' in predictions on this point.

*Barefoot v. Estelle,* 463 U.S. at 899, 103 S.Ct. at 3397.

In the instant matter, the relevant portion of Dr. Norwood's testimony during the sentencing proceedings consisted of the following:

> Q: Dr. Norwood, did you have an occasion to observe or interview the defendant in this case, Mr. Kenneth Delong?
>
> A: I did.
>
> Q: What was the purpose of the interview and the observations?
>
> A: We were ordered to do an evaluation of his competency to stand trial which involved whether he can assist his attorney and understand the Courtroom processes and we also evaluate whether he was insane or sane at the time of the offense in which he is charged.
>
> Q: Did·you have an occasion to determine his, or in determining his competency, did you make certain observations about the defendant as to how intelligent he appeared to be, whether he was cogni-

zant in his efforts to stand trial and as to his functioning abilities and his—

A: Yes, we do what is called a mental status evaluation when we do the overall evaluations.

Q: What did you have an occasion to determine about Mr. Delong?

A: Well, at that time he was very aware of what was happening to him. He was oriented to where he was and to who the people were, and the time. He had above average intelligence. He was very articulate. He had a very good vocabulary. He was able to think through and there was no evidence of anything like mental retardation or any kind of organic or philosophical problems. There was nothing to suggest a significant mental disease.

Q: Did you in order to make an evaluation as to his mental state at the time of the offense in addition in your mere observation of him and asking general questions of him, what else did you need?

A: I am sorry?

Q: What else would you want from the defendant in order to make some observations about his mental state at the time of the offense?

A: He would have had to agree to go through the circumstances of the offenses as he remembered it.

Q: Did you advise about that prior to talking to him about his mental state at the time of the offense?

A: Yes, it is part of our procedure that we tell each defendant about where the reports will go and how the information will be used. For competency to stand trial which just involves does he know what juries and Judges are and certification and that information goes to all of the parties involved which is the Court's attorney and the Commonwealth Attorney. The evaluation which involves the offense itself and what went on from his perspective at that time only goes to his attorney. Therefore, that information is confidential unless his attorneys and he agree that they want to utilize that in court.

Q: After explaining this to the defendant, did he make any statements to you about the offense or did he give you any information which would help you in your evaluation?

A: No, he agreed to do the competency to stand trial evaluation but he refused to complete the mental state of the testimony at the time of the offense or the insanity evaluation.

Q: How long did you have an occasion to see the defendant and how many times did you see him?

A: Well, I saw him once approximately for an hour.

Q: During the time you were with the defendant, did he express any remorse whatsoever about what he would have done?

A: Not to us, no.

Q: Thank you. That is all I have.

Transcript 11–7–86 at 104–07.

Thereafter, petitioner's trial counsel conducted a cross-examination of Dr. Norwood:

Q: Dr. Norwood, Mr. Delong did not tell you that he did anything?

A: I am sorry?

The Court: Restate the question.

Q: Mr. Delong didn't say that he did anything for which he would be remorseful about?

A: He did not make any statement about the offense.

*Id.* at 107.

■ It is the finding of this Court that *Estelle* and *Ake* are inapplicable. As a result, petitioner's trial counsel were not ineffective for either failing to object to Dr. Norwood's testimony or failing to offer medical testimony in rebuttal. Moreover, Dr. Norwood's testimony was insignificant when considered with the testimony pertaining to petitioner's prior conviction for murder, the use of a firearm in the commission of that murder, and petitioner's administrative convictions for assault while he was incarcerated. Consequently, Dr. Norwood's testimony apparently added nothing to the Commonwealth's assertion of "future dangerousness." Thus, the Court

finds no merit to petitioner's claim that trial counsel were ineffective as a result of their failure in objecting to Dr. Norwood's testimony and their failure in offering evidence to rebut Dr. Norwood's testimony.

Additionally, petitioner does not prevail on his claim that trial counsel were constitutionally deficient because they decided to forego the presentation of mitigation evidence during the penalty phase of the trial. It is petitioner's contention that trial counsel erred in failing to investigate and utilize petitioner's employment history. This claim is without merit. *See Burger v. Kemp,* 483 U.S. 776, 778, 107 S.Ct. 3114, 3117, 97 L.Ed.2d 638 (1987) (death sentence affirmed where trial counsel presented no evidence in mitigation). Consequently, this claim will be dismissed.

> D. Petitioner's claim that he was denied effective assistance of counsel because trial counsel failed to make timely objections at trial

Petitioner asserts that he was denied the effective assistance of counsel by virtue of counsel's failure to make certain objections at trial. This claim was raised and briefed by the parties during the state habeas proceedings. As a result, the state court adopted respondent's analysis set forth in respondent's answer to the state court petition.

██ According to petitioner, trial counsel should have objected to the trial court's conditional ruling when the defense called the probation officer of one of the prosecution's witnesses to the stand. When the prosecution objected to this testimony, the defense answered that it was attempting to establish that the witness had the same motive as petitioner, e.g. killing Detective Taylor in an attempt to avoid having probation revoked. *See* Transcript 11–7–86 at 8. At that point, the prosecution stated that if petitioner introduced evidence concerning Bowers' motive, "they are opening up the evidence that ... Delong ... had a motive...." *Id.* at 10–11. The court then ruled that if petitioner insisted on pursuing his theory through the testimony of Bowers' probation officer, the prosecution would be allowed to "put it to him." *Id.* at

11. Petitioner's counsel did not object and subsequently stated that they had no further questions.

Again, there is a strong presumption that counsel has acted strategically during the heat of the trial. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Accordingly, petitioner cannot rebut this strong presumption and, consequently, this claim will be dismissed.

In addition, petitioner contends trial counsel were ineffective in failing to object to the trial court's exclusion of testimony from two black police officers who had allegedly had encounters with petitioner in the past. Petitioner alleges that both officers would have shed light on his prior relations and experiences with black police officers and his lack of racial animus. Petitioner maintains that such evidence was necessary to rebut the prosecution's evidence that immediately before shooting Detective Taylor petitioner had referred to Taylor as a "nigger."

██ During petitioner's case his counsel offered "a proposed stipulation." *See* Transcript 11–7–86 at 3. The proposed stipulation consisted of a one-page, handwritten statement, signed by petitioner's counsel, which stated that petitioner was arrested in 1983 by a black Richmond police officer and petitioner did not offer any resistance and "there were no problems with the arrest." *Id.* at 4. Additionally, petitioner proffered the testimony of a black deputy sheriff from Hanover County. *Id.* Counsel informed the court that the deputy would testify "that he had arrested [petitioner] last year on two traffic charges and he had no problems with him." *Id.*

The proffered testimony of both officers was apparently intended to negate the potential inference by the jury that petitioner was hostile toward blacks in general and black police officers in particular. Consequently, the inference may have been raised that petitioner was more than likely inclined to kill Detective Taylor.

The trial court ruled that it would not admit the stipulation into evidence and responded to an inquiry from petitioner's

counsel that the court would determine whether the ruling also applied to the proffered evidence from the Hanover deputy when they "crossed that bridge." *Id.* at 5. The court apparently cautioned counsel, however, by stating, "[l]ike I say, you know what the rules are and what rebuttal testimony is." *Id.*

Respondent maintains that the evidence proffered was an attempt at character evidence and, therefore, was properly excluded as character evidence must be restricted to evidence of the defendant's reputation. The Federal Rules of Evidence provide,

> (a) Reputation or opinion.—In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
>
> (b) Specific instances of conduct.—In cases in which character or a trait of character of a person is an essential element of a charge, claim *or defense*, proof may also be made of specific instances of that person's conduct.

FED.R.EVID. 405 (emphasis added).

Clearly, the proposed "stipulation" was properly excluded since character evidence must be in the form of testimony under Rule 405(a). Similarly, the testimony of the Hanover deputy sheriff was properly excluded since an accused is not allowed to prove specific acts in order to demonstrate his or her good character. *Zirkle v. Commonwealth*, 189 Va. 862, 871, 55 S.E.2d 24, 29 (1949); *accord Fields v. Commonwealth of Virginia*, 2 Va.App. 300, 306, 343 S.E.2d 379, 382 (1986) (when defendant places his character in issue, he may not establish his good character by proving specific acts). Thus, petitioner's claim that his trial counsel were ineffective for failing to object to the court's exclusion of the aforementioned testimony will be dismissed.

Petitioner further asserts that trial counsel were ineffective in failing to object to testimony by the psychiatrist who testified for the Commonwealth during the penalty phase of the trial court proceedings. According to petitioner, counsel should have objected when the psychiatrist testified that petitioner did not express any remorse for the offense on the ground that this statement violated case law as well as Virginia statutes.

Petitioner contends that the psychiatrist was directed to evaluate petitioner merely for the purpose of determining whether petitioner was competent to stand trial. Hence, petitioner argues that the psychiatrist, Dr. Norwood, should not have testified to any aspects of petitioner's mental state at the time of the offense for which petitioner was charged.

It must first be noted that the Order of the trial court belies petitioner's assertion that Dr. Norwood was to evaluate petitioner merely for the purpose of determining whether he was competent to stand trial. The Order expressly states that petitioner was to be evaluated both for competency to stand trial as well as his mental state at the time of the offense. *See* Respondent's state habeas Exhibit D. Dr. Norwood, acting at the Court's direction, undertook petitioner's evaluation.

During the penalty phase of the trial, the Commonwealth called Dr. Norwood as its witness. Dr. Norwood's testimony consisted of the following:

> Q. How long did you have occasion to see the defendant and how many times did you see him?
>
> A. Well, I saw him once approximately for an hour.
>
> Q. During the time that you were with the defendant, did he express any remorse whatsoever about what he would have done?
>
> A. Not to us, no.

*See* Transcript 11-7-86 at 106.

Petitioner's counsel did not object to this testimony. Thereafter, the following exchange occurred during Dr. Norwood's cross-examination:

> Q. Mr. Delong didn't say that he did anything for which he would be remorseful about?

A. He did not make any statement about the offense.

*Id.* at 107.

Petitioner advances nothing that would enable this Court to determine that counsel's reaction to Dr. Norwood's testimony was anything other than a tactical decision. In addition, even if Dr. Norwood's testimony was admitted in error, "state violations of state law do not, without more, present a cognizable federal claim." *Peterson v. Murray*, 904 F.2d 882, 886 n. 6 (4th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990). Consequently, petitioner fails to rebut the strong presumption that counsel's failure to object was a strategic choice. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Thus, this claim will be dismissed.

■ Petitioner further asserts that trial counsel provided him with constitutionally ineffective assistance by failing to object to the introduction of petitioner's conviction for second degree murder. According to petitioner, evidence of prior convictions is admissible only if the convictions involved an "intentional act of unprovoked violence." Under the law of Virginia, the Commonwealth may establish an individual's future dangerousness by "evidence of the prior history of the defendant." VA. CODE ANN. § 19.2–264.4(C). This provision has been construed by the Virginia Supreme Court to encompass the admission of convictions for non-violent offenses. *See Frye v. Commonwealth*, 231 Va. 370, 392–93, 345 S.E.2d 267, 283 (1986). Hence, evidence of petitioner's prior conviction was properly admitted and, therefore, petitioner's claim will be dismissed. Additionally, even if the Court found that the admission of such evidence constituted a violation of state law, such a claim may not be reviewed by a federal habeas court. *See Peterson v. Murray*, 904 F.2d at 886 n. 6.

■ Similarly, the Court finds there is no merit to petitioner's contention that trial counsel were constitutionally ineffective because they failed to object to statements made by the Commonwealth's Attorney. According to petitioner, the Commonwealth's Attorney improperly made references to the impact of Detective Taylor's death on his family. Such statements, petitioner claims, are "victim impact" statements prohibited by the Supreme Court's holding in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). Petitioner's claim, however, does not state a federal constitutional claim in light of the recent decision of *Payne v. Tennessee*, — U.S. —, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).

In *Payne* the Supreme Court overruled *Booth v. Maryland* and *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) to the extent they held that the admission of evidence or prosecutorial comments as to the impact of a crime upon the victim's family during the sentencing phase of a capital murder trial does not constitute a *per se* violation of the Eighth Amendment. As a result, this claim will be dismissed.

E. Petitioner's claim that he was denied effective assistance of counsel because trial counsel did not prepare, proffer, and argue adequate jury instructions

■ Petitioner argues that trial counsel did not effectively represent petitioner because they failed to prepare and offer adequate jury instructions. Petitioner can be heard to complain that the instructions were "constitutionally inadequate" as they allegedly did not explain that unanimity was required in order to impose the death sentence. *See* Petitioner's Opposition to Respondent's Motion to Dismiss at 35.

As respondent notes, the trial judge expressly informed the jury that the decision to impose the death sentence had to be unanimous:

Ladies and gentlemen, when I say that you must be unanimous, you must be unanimous if you impose the death penalty. Anything short of unanimous is life imprisonment.

Transcript 11–7–86 at 118.

Consequently, the jury was sufficiently apprised of the need for unanimity without an express instruction to that effect.

Hence, trial counsel were not ineffective for failing to request such an instruction and petitioner is, therefore, unable to satisfy the requirements of *Strickland*.

Petitioner also takes issue with the trial counsel's failure to offer or request a jury instruction defining the term "mitigating circumstance" or informing the jury that anything can be considered in mitigation of sentence. In addition, it is petitioner's contention that trial counsel were ineffective in their failure to offer or request an instruction that in order to impose the death penalty the jury must be convinced beyond a reasonable doubt that aggravating factors outweigh mitigating factors. Petitioner further asserts that counsel should have prepared and proffered an instruction defining mitigation. In *Le Vasseur v. Commonwealth*, 225 Va. 564, 594–95, 304 S.E.2d 644, 660–61 (1983), the Virginia Supreme Court ruled that such an instruction is unnecessary.

The instructions given to the jury were adapted from the *Virginia Model Jury Instructions, Criminal*, Vol. I, at 477. Instruction A informed the jury that it "may" impose a death sentence if "future dangerousness" has been proven beyond a reasonable doubt. The instruction further told the jury that if on the basis of "all the evidence," it was not satisfied that death was the appropriate penalty, the jury "shall" impose a life sentence. Instruction B essentially told the jury that a life sentence was mandatory if the prosecution had not proved "future dangerousness" beyond a reasonable doubt. The Court of Appeals for the Fourth Circuit has held that such instructions adequately convey to the jury that a death sentence is not mandatory even if one or both aggravating factors have been proved beyond a reasonable doubt. *Clanton v. Muncy*, 845 F.2d 1238, 1240 (4th Cir.1988).

Moreover, it has been recognized that the Supreme Court has never mandated the precise form that state jury instructions must take. *Briley v. Bass*, 750 F.2d 1238, 1244 (4th Cir.1984) (citation omitted). Thus, in this regard, the question of the propriety and sufficiency of jury instruc-

tions is solely a matter of state law and is not cognizable by a federal court. *Id.;* *see also Hutchins v. Garrison*, 724 F.2d 1425, 1437 (4th Cir.1983).

In addition, petitioner contends that trial counsel were ineffective because they did not request an instruction on a lesser included offense. According to petitioner, trial counsel should have offered or requested jury instructions defining the lesser included offenses of which petitioner may have been found guilty as a result of his impaired mental state at the time Detective Taylor was killed. Petitioner defaulted on this portion of his claim because he had not included it in his state habeas petition. Consequently, the court declined to hear the claim on the ground that it had not been timely raised. Transcript 6–21–89 at 9. Petitioner's procedural default during his state habeas proceedings is a procedural default similarly barring federal review. *Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Consequently, this claim will be dismissed.

> F. Petitioner's claim that he was denied effective assistance of counsel because trial counsel failed to adequately investigate petitioner's case and failed to develop a responsible legal strategy for the sentencing

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the standards for determining whether one has been deprived of the effective assistance of counsel in derogation of his or her sixth amendment rights. The Court promulgated a two-prong test for determining whether counsel's performance was so deficient that it reached constitutional proportions and thus requires the overturning of the conviction. Initially, petitioner must establish that counsel's performance was ineffective or deficient. *Id.* at 689, 104 S.Ct. at 2065. Secondly, petitioner must demonstrate that counsel's deficient or ineffective performance prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. These standards apply in federal collateral proceedings as well as

on direct appeal. *Id.* at 697, 104 S.Ct. at 2069.

In order to meet the test for ineffective assistance of counsel, petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. at 2064. There is a strong presumption that an attorney's conduct "falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. If petitioner satisfies the first prong of the inquiry, he must then demonstrate that he was prejudiced by counsel's ineffectiveness. *Id.* at 694, 104 S.Ct. at 2068.

In an allegation claiming ineffective assistance of counsel, *Strickland* imposes a "rigorous" and "highly demanding" standard upon petitioner to prove counsel's "gross incompetence." *Kimmelman v. Morrison*, 477 U.S. 365, 381–82, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986). In light of this standard, and after a reading of the record, it appears that trial counsel conducted a reasonable investigation in preparation for the sentencing phase of the proceedings. A reasonable investigation satisfies the *Strickland* requirements. As petitioner has failed to establish that counsel's performance was ineffective, it is unnecessary to address the prejudice prong of the *Strickland* inquiry. Consequently, this claim will be dismissed.

G. Petitioner's claim that he was denied the effective assistance of counsel because trial counsel failed to preserve issues for appeal and failed to adequately raise issues on appeal

The Fourth Circuit has held that there is a "strong presumption that counsel's performance" on appeal was reasonable. *Evans v. Thompson*, 881 F.2d 117, 122 (4th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3255, 111 L.Ed.2d 764 (1990). When representing petitioner on his appeal to the Virginia Supreme Court, counsel raised and briefed assignments of error. Petitioner has not proffered any evidence which would overcome the presumption that "counsel determined what [they] believed to be petitioner's most viable arguments

6. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

and raised them on appeal." *Evans*, 881 F.2d at 124. Accordingly, petitioner's claim will be dismissed.

## IV

Petitioner's claim that he was denied due process because the Commonwealth failed to turn over exculpatory evidence in violation of *Brady v. Maryland*

Petitioner contends that he is entitled to conduct discovery on his prosecutorial misconduct claim because the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*.[6] The evidence sought and allegedly withheld by the Commonwealth includes notes from the interviews of Mr. Bradley, Mr. Bowers and Ms. Smith—the three witnesses who testified against petitioner on the basis of their personal knowledge of the crime. According to petitioner, this allegedly withheld evidence could have been used to exculpate petitioner, support a conviction on a lesser charge, or reduce petitioner's penalty.

Violations of *Brady v. Maryland* occur when the prosecution suppresses evidence which is "material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196. The evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 675, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985). The burden is upon petitioner to demonstrate the materiality of the allegedly withheld evidence. *Id.* In the instant matter, petitioner has not sufficiently stated the alleged substance of the notes, *etc.*, which would enable this Court to determine whether the allegedly suppressed evidence was "material" under the *Bagley* standard. Consequently, this claim will be dismissed.

## V

Petitioner's claim that he was denied due process because the trial court committed prejudicial error in impaneling the jury

At petitioner's trial, the court excluded eight prospective jurors based upon their

(1963).

confessed inability to impose a death sentence. In fact, on direct appeal, petitioner conceded that each of the eight jurors stated that "he or she would not under any circumstances impose the death penalty." *See* Respondent's Exhibit V at 15. Further, the Virginia Supreme Court expressly found, as a matter of fact, that the jurors had "stated that they were unalterably opposed to the imposition of the death penalty." *See Delong v. Commonwealth,* 234 Va. 357, 360, 362 S.E.2d 669, 670 (1987). The factual findings of the state court are entitled to a presumption of correctness by this Court. 28 U.S.C. § 2254(d). Additionally, the Virginia Supreme Court found that petitioner had procedurally defaulted. Thus, this Court is barred from reviewing this claim. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). As a result, this claim will be dismissed.

It is also petitioner's contention that trial counsel were ineffective because they failed to determine whether the jurors who indicated some knowledge of the case knew of petitioner's prior conviction or his parole status at the time of the offense. In addition, petitioner claims that his counsel were ineffective for failing to question the jurors about their knowledge of the *Alley* case. Both claims are without merit as petitioner is unable to establish that counsel were constitutionally ineffective under the stringent test enunciated in *Strickland v. Washington.* Moreover, the Supreme Court has held that a content-based inquiry pertaining to pre-trial publicity is not required when attempting to ascertain the depth of a juror's knowledge. *Mu'Min v. Virginia,* 111 S.Ct. at 1905. As a result, counsel could not have been ineffective for failing to request such an inquiry. Consequently, petitioner's claim will be dismissed.

## VI

Petitioner's claim that pre-trial identification was grossly prejudicial and violative of petitioner's Fourteenth Amendment rights

Petitioner asserts that the pre-trial identification of him by a Commonwealth witness was grossly prejudicial and in violation of his Fourteenth Amendment rights. This claim was litigated on direct appeal and rejected by the Supreme Court of Virginia. *See Delong v. Commonwealth,* 234 Va. 357, 368, 362 S.E.2d 669, 675 (1987).

After the shooting of Detective Taylor, an eyewitness to the shooting was transported by the police to the scene of petitioner's arrest. At that time the witness made a positive identification of petitioner as the individual who had shot Detective Taylor.

■■■ A question of constitutional magnitude occurs when a "one-on-one" confrontation between a witness and a suspect "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [petitioner] was denied due process of law." *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). A determination of the question involves a consideration of the totality of the circumstances. *Id.* at 302, 87 S.Ct. at 1972. As the Supreme Court has explained,

> [t]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

■■■ This Court has reviewed the totality of the circumstances in light of the several factors listed in *Neil* and finds that the trial court correctly declined to suppress the identification. The Virginia Supreme Court found that the witness was a disinterested party whose attention was "focused upon the drama unfolding before her." *Delong v. Commonwealth,* 234 Va. at 367, 362 S.E.2d at 674. Consequently, the witness was able to give the investigating officers a comprehensive description of the clothing and physical characteristics of petitioner.

In addition, the witness' identification "proved to be accurate in every detail."

*Id.* Moreover, the length of time between the crime and the confrontation was short. Thus, there is ample support for the trial court's conclusion that the identification was reliable. As a result, the Court finds that the trial court did not err in its determination that suppression of the identification was not mandated by the circumstances. *See Stanley v. Cox,* 486 F.2d 48, 50 (4th Cir.1973), *cert. denied,* 416 U.S. 958, 94 S.Ct. 1975, 40 L.Ed.2d 309 (1974).

### VII

Petitioner's claim that he was denied due process because the Commonwealth introduced inflammatory and prejudicial psychological testimony at sentencing and because the prosecution engaged in improper argument

Petitioner maintains that the prosecution engaged in improper argument by making references to the victim. The Virginia Supreme Court found that petitioner had procedurally defaulted on this claim under *Slayton v. Parrigan.* Accordingly, this Court is barred from reviewing this claim. *See Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

### VIII

Petitioner's claim that he was denied due process because the trial court improperly admitted evidence of past crimes of which petitioner had been convicted

The Virginia Supreme Court found that petitioner procedurally defaulted on this claim and it was, therefore, barred by *Slayton v. Parrigan.* Consequently, this Court is similarly barred from reviewing this claim. *See Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

### IX

Petitioner's claim that he was denied due process because the jury was inadequately and improperly instructed because the instructions were confusing and illogical

The Virginia Supreme Court found that this claim was barred by *Slayton v. Parri-*

7. Former VA.CODE ANN. § 18.2-31(f).

*gan* by reasons of procedural default. As a result, this Court is likewise barred from reviewing this claim. *See Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

### X

Petitioner's claim that he was denied due process because the Commonwealth failed to establish the elements of capital murder

■ It is petitioner's argument that the Commonwealth failed to establish beyond a reasonable doubt that petitioner killed Detective Taylor for the purpose of interfering with the performance of his official duties. Thus, according to petitioner, an essential element of the capital offense alleged was never proven.

The Supreme Court enunciated the standard of review for a federal habeas court considering the question of whether sufficient evidence exists to support a state court conviction against a due process challenge. In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Court held that the habeas court, viewing the evidence in the light most favorable to the prosecution, must ascertain whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 318–19, 99 S.Ct. at 2788–89.

On direct appeal, petitioner challenged the sufficiency of the evidence with respect to the claim that he killed Detective Taylor for the purpose of interfering with the performance of Detective Taylor's duties as a police officer in violation of VA. CODE ANN. § 18.2–31(6).[7] The Virginia Supreme Court found that the evidence left "no reasonable doubt that [petitioner] recognized he was being pursued by an unmarked police car with flashing lights, signalling him to stop." *Delong v. Commonwealth,* 234 Va. at 369, 362 S.E.2d at 676.

As previously stated, the state court's findings of historical facts are presump-

tively correct under 28 U.S.C. § 2254. It is the further finding of this Court that the state court's findings are sufficiently supported by the record. As a result, this claim must be dismissed.

## XI

Petitioner's claim that Virginia's capital murder statute and sentencing procedures are unconstitutional, on their face and as applied, under the eighth and fourteenth amendments

The Virginia Supreme Court applied the rule in *Hawks v. Cox*, 211 Va. 91, 175 S.E.2d 271 (1970), and dismissed this claim for reasons of procedural default. Hence, this Court is likewise barred from reviewing this claim. *See Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

## XII

Petitioner's claim that his eighth and fourteenth amendment rights were violated because the death penalty is applied in an arbitrary and discriminatory manner determined by the sex and financial status of the offender

The Virginia Supreme Court found that this claim was barred by *Slayton v. Parrigan* as it had not been previously raised. As a result, this Court is similarly barred from reviewing this claim. *See Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

## XIII

The imposition of the death penalty is unconstitutional because of the Supreme court's failure to engage in adequate review of death penalty decisions

The Virginia Supreme Court found that as this claim had not been previously raised, petitioner had procedurally defaulted and it was barred by *Slayton v. Parrigan*. Likewise, this Court is precluded from reviewing this claim. *See Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

## XIV

■ Petitioner has filed a motion requesting discovery as well as an evidentiary hearing before this Court on the several claims advanced in his petition for a writ of habeas corpus. It is within the Court's discretion to allow an evidentiary hearing pursuant to 28 U.S.C. § 2254(d). *See Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). If, however, after a reading of the record there does not appear to be a dispute regarding material facts, the Court may make a determination on the petition without an evidentiary hearing. *Id.* Indeed, as the Supreme Court noted,

a federal court *must* grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id.* at 313, 83 S.Ct. at 757.

■ Moreover, a habeas petitioner seeking discovery or a federal hearing must allege the *ways* in which the state court fact-finding procedures were less than adequate. *Roach v. Martin*, 757 F.2d 1463, 1470 and n. 6 (4th Cir.1985) (petitioner did not have a right to an evidentiary hearing "to redevelop his constitutional claims that the state courts found were without merit" especially where he did not specify which factual findings were inadequate and which legal conclusions they affected).

It is the finding of this Court that such a hearing is unnecessary. There is no material dispute between the parties regarding any material facts. Additionally, the state court factual determination is supported by

the record as a whole, the fact-finding procedure employed by the state was adequate to afford a full and fair hearing, and there is no substantial allegation of newly-discovered evidence. Furthermore, the material facts pertaining to petitioner's allegations of ineffective assistance were adequately developed at the state court hearing and petitioner was afforded a full and fair hearing on the matter.

Likewise, petitioner is unable to demonstrate the *ways* in which the fact-finding procedures of the state habeas court were less than adequate. As a result, both petitioner's motion for an evidentiary hearing as well as petitioner's motion for funds to secure the talents of an investigator will be denied.

An appropriate order shall issue.

### ORDER

For the reasons stated in the attached Memorandum, Respondent's motion to dismiss the habeas corpus petition will be granted.

And it is SO ORDERED.

### MEMORANDUM AND ORDER ON MOTION TO ALTER OR AMEND

This matter is before the court on Petitioner's Motion to alter or amend this court's order of September 4th dismissing the habeas petition. For the reasons stated below, this motion is DENIED.

### I.

Petitioner, a Virginia State prisoner, challenges a conviction in the Circuit Court for the City of Richmond of capital murder for killing a police officer. On September 4, 1991, this court entered an order dismissing the habeas petition. Petitioner now requests this court to alter or amend that order.

Petitioner's motion is essentially based on the following arguments: the improper denial of petitioner's motion for funds for an investigation; the improper application of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and

the failure to include a certificate of probable cause in the September 4, 1991 order.

### II. Motion for Funds for Investigation

It is important to note that Petitioner has never filed an independent pleading detailing, for the Court's consideration, his *need* for discovery and/or an evidentiary hearing. The Court, on its own, reviewed the factual circumstances underlying the offense, the legal issues raised by petitioner and the history of petitioner's case in State court (direct appeal and habeas corpus). The above review led this Court to conclude that there was no reasonable need for an evidentiary hearing. Petitioner now seeks to alter or amend the Court's previous order. Petitioner asserts that the right to a hearing, and to the ancillary fact-development tools of investigation and discovery, are crucial to the functioning of the federal habeas corpus process. *See Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963) ("[t]he language of Congress, the history of the writ, the decisions of this court, all make clear that the power of inquiry on federal habeas corpus is plenary."). According to petitioner, this Court's denial of the habeas petition without affording petitioner the opportunity to investigate his claims precludes the plenary inquiry required by *Townsend*.

Petitioner filed an *ex parte* application for funds for an investigator pursuant to 21 U.S.C. § 848(q)(9). That statute reads as follows:

(9) Upon a finding in *ex parte* proceedings that investigative, expert or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or sentence, the court shall authorize the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment of fees and expenses therefore, under paragraph (10).

Immediately after discussing its denial of petitioner's motion for an evidentiary hearing, the court denied petitioner's motion for funds. The court stated, "It is the finding of this Court that [an evidentiary] hearing is not necessary.... As a result, both petitioner's motion for an evidentiary hear-

ing as well as petitioner's motion for funds to secure the talents of an investigator will be denied." Memorandum Opinion at 615–616.

Petitioner incorrectly argues that the recent decision in *McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), requires the court to reconsider its denial of petitioner's motion for investigative funds. Applying the doctrine of "abuse of the writ," the court in *McCleskey* held that a federal habeas petitioner who cannot demonstrate sufficient cause for failing to raise a particular claim in his first federal habeas case may be foreclosed from pursuing those claims in a second or subsequent habeas action.

The rule announced in *McCleskey* is intended to "curtail the abusive petitions that in recent years have threatened to undermine the integrity of the habeas corpus process." 111 S.Ct. at 1471. The *McCleskey* rule seeks to "vindicate the State's interest in the finality of its criminal judgements" and to reduce the heavy burden repetitive federal habeas petitions place on scarce federal judicial resources. *See id.* at 1469–70.

The question in determining compliance with *McCleskey* is "whether the petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process" including discovery, expansion of the record, and evidentiary hearings. *Id.*

▮▮▮▮ Petitioner seems to argue that since *McCleskey* will limit habeas petitioners to those claims and grounds for relief articulated in the first habeas petition, he is automatically entitled to funds to hire an investigator. The Court specifically rejects this argument. Section 848(q) states that the court *shall* provide funds for investigative and other experts' services reasonably necessary for the representation of the case. A request for funds for investigation must set forth the necessity for an investigator, the exact duties to be performed by the investigator and the reasons why the attorneys cannot perform the investigation. *United States v. Goodwin*, 770 F.2d 631

(7th Cir.1985). It is this Court's opinion that petitioner has failed to satisfy all of these requirements.

According to the affidavit of Mr. Charles Vaughan (attached to petitioner's Application for Funds) petitioner proposes to investigate "the professional and personal background and experience of the attorneys who represented petitioner Delong at the Richmond trial on the capital murder charge in 1986...." He also proposes to investigate "potential conflicts of interest or other grounds for questioning the impartiality of the judge who presided over the proceedings on Mr. Delong's petition for a writ of habeas corpus in State court." The ridiculous nature of such proposed investigation should be abundantly clear. In petitioner's world every lawyer who defends and loses a capital murder case will be subject to investigation during the first federal habeas proceeding. Likewise, the State court judge who presided over the State habeas proceeding would be subject to full investigation. Petitioner, in effect, seeks a license to go on a fishing expedition. But even worse, he expects the federal government to pay for it. If *McCleskey* requires such a result, the Fourth Circuit will have to say so loud and clear.

### III. Improper Application of *Strickland v. Washington*

Most of petitioner's challenges to his conviction and sentence involve ineffective assistance of counsel claims either on the face of the claim or in response to an affirmative defense asserted by respondent. Petitioner argues that this Court's application of the test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), effectively transformed the rebuttable statutory presumption of effectiveness into an irrebuttable one.

Petitioner reports that he has not had a hearing on a significant majority of his ineffective assistance claims, and maintains that the limited evidentiary hearing in the State court did not satisfy the full, fair and adequate hearing requirement in *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). According

to petitioner, adjudication of ineffective assistance claims almost always requires consideration of evidence outside of the trial record—a consideration of which petitioner has been denied.

A Rule 59(e) motion is not intended to allow for reargument of the very issues that the court has previously decided.

[Plaintiff's] brief in support of his motion is no more than an expression of a view of the law contrary to that set forth in this Court's opinion. Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.

Since the plaintiff has brought up nothing new—except his displeasure—this Court has no proper basis upon which to alter or amend the order previously entered. The judgment may indeed be based upon an erroneous view of the law, but, if so, the proper recourse is appeal—not reargument.

*Durkin v. Taylor,* 444 F.Supp. 879, 889 (E.D.Va.1977).

Petitioner presents the same arguments in this motion as he did in opposition to respondent's motion to dismiss the petition. The court has ruled in favor of the respondent, devoting most of its memorandum opinion to the application of the *Strickland* test to petitioner's ineffective assistance of counsel claims. The court declines to entertain petitioner's arguments once again.

**IV. Failure to Include a Certificate of Probable Cause**

 Petitioner requests this court to issue a Certificate of Probable Cause pursuant to 28 U.S.C. § 2253 and Rule 22 of the Federal Rules of Appellate Procedure. However, pursuant to Rule 22(b), the district court's decision of whether to issue a certificate of probable cause shall be made *after* the petitioner files a timely appeal in the appropriate United States Circuit Court.

In a habeas proceeding in which the detention complained of arises out of process issued by a state court, an appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of probable cause. *If an appeal is taken by the applicant,* the district judge who rendered the judgment shall either issue a certificate of probable cause or state the reasons why such a certificate should not issue.

Fed.R.App.P. 22(b) (emphasis added).

Until the petitioner files a timely appeal of this judgement, this court declines to decide whether to issue a certificate of probable cause.

**V.**

For the reasons stated above, petitioner's motion to alter or amend this Court's order of September 4, 1991 is DENIED.

And it is SO ORDERED.