Larry Donnell BECTON,
Petitioner–Appellant,

v.

Talmadge BARNETT; Attorney General
of North Carolina,
Respondents–Appellees.

No. 90–7285.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1990.

Decided Dec. 26, 1990.

Judith Thomas Naef, North Carolina Prisoner Legal Services, Inc., Raleigh, N.C., for petitioner-appellant.

Clarence J. DelForge, III, Asst. Atty. Gen., Raleigh, N.C. (Lacy H. Thornburg, Atty. Gen., Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N.C., on brief), for respondents-appellees.

Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and NICKERSON, United States District Judge for the District of Maryland, sitting by designation.

ERVIN, Chief Judge:

Petitioner Larry Becton filed a petition for habeas corpus which was denied without an evidentiary hearing by the district court. Finding that such a hearing was necessary in this case, we vacate and remand for further proceedings consistent with this opinion.

I.

Becton has experienced psychological difficulties for many years, both before the crime in this case and after his incarceration for this crime. These difficulties will be best understood as set out in their chronological order.

In November 1981, Becton was sent by court order to Dorothea Dix Hospital to

have his competency evaluated. He had been charged with assault with intent to commit rape and first degree burglary. Becton was found competent to stand trial. However, his diagnosis was a mixed personality disorder with some hysterical features and a history of substance abuse. His IQ was tested at a level of 60.

In July 1982, Becton was again sent to Dorothea Dix by court order. He had been charged with first degree rape and first degree burglary. At that time, he was again found competent to stand trial.

In December 1982, Becton was involuntarily committed to Cherry Hospital for being delusional and paranoid. He had been walking on the street wearing no shoes and walking around his house wearing no clothes. He was confused and often did not know where he was. He had auditory hallucinations and thought that he was an Army Captain. The diagnosis was schizophrenia, acute undifferentiated type. Ongoing psychiatric treatment was recommended.

In January 1983, Becton was voluntarily admitted to Cherry Hospital because he was hearing voices, with some of them threatening him. His diagnosis was schizophrenia, chronic differentiated with acute exacerbation.

Becton was charged with the crimes in this case in October 1983; he was tried and convicted in January 1984. After conviction and incarceration, Becton's psychological troubles continued.

In February 1984, Becton was admitted to the mental ward in the prison for exhibiting psychotic behaviors. The diagnosis was schizophrenia, chronic undifferentiated type, and he was placed on medication.

In March 1985, Becton was admitted to the mental ward for exhibiting strange behavior including walking like a chicken and barking like a dog.

In May 1985, Becton was again admitted to the mental ward for experiencing auditory hallucinations and suicidal thoughts. This time the diagnosis was paranoid schizophrenia, and he was placed on different medication.

In June 1987, Becton showed signs of decompensation which included rambling speech. In August 1987, Becton remained delusional, claiming to work for the Army.

In April 1988, Becton was treated for being delusional. He spoke in a singsong manner and became withdrawn.

This summary of Becton's psychological problems shows that Becton has periods of extreme mental illness. He also has periods where he shows few signs of illness.

The proceedings in this case began when Becton was charged with first degree burglary, two counts of first degree rape, and armed robbery on October 10, 1983. At trial, Becton's counsel put on no evidence in his defense. Becton was convicted of second degree rape, felonious breaking and entering, and larceny from the person in January 1984. After sentencing, counsel informed the trial court that Becton did not desire to give notice of appeal. No notice of appeal was ever filed.

Becton filed three pro se motions in state court alleging ineffective assistance of counsel. The grounds for the ineffective assistance claim were that counsel failed to appeal Becton's conviction and failed to investigate his competency to stand trial. His motions were summarily denied. In this habeas petition, Becton raised the same two claims of ineffective assistance of counsel. The district court denied Becton's petition without an evidentiary hearing. *Becton v. Barnett*, CA–88–57–HC (E.D.N.C. Jan. 3, 1990). This appeal followed.

In this habeas petition, Becton alleged that he informed counsel before trial that he had been in and out of mental hospitals prior to his arrest. He further contended that he asked counsel to send him to be evaluated to determine if he was competent to stand trial. However, counsel made no attempt to have Becton evaluated, and the record is devoid of any evidence that counsel took any steps to ascertain the competency of Becton.

Although Becton did not give notice of appeal at the trial, he alleged in this petition that he contacted counsel three days

after the trial to ask counsel to appeal. He alleged further that counsel assured him that there was still time to appeal as the ten day period for appeal had not yet run. However, no appeal was ever filed.

## II.

■ Where material facts are in dispute, the federal court in a habeas proceeding must hold an evidentiary hearing unless the facts were resolved in a prior state hearing. 28 U.S.C. § 2254(d)(1); *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1960). In the present case, Becton raised the current issues in three pro se motions in the North Carolina courts for appropriate relief. However, the state courts summarily dismissed those motions. Therefore, no state court has resolved the factual claims here presented, namely, that counsel rendered ineffective assistance. Where no state court has made a factual determination to which a presumption of correctness could attach, "quite simply, *Townsend* and § 2254 require the district court to grant a hearing de novo on that question." *Ford v. Wainwright,* 477 U.S. 399, 410–11, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986) (plurality opinion).

■ Claims of ineffective assistance of counsel are mixed questions of law and fact. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court explained:

> Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d), and although district court findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a), both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.

*Id.* Therefore, the ultimate conclusion of a state or federal court that counsel was effective is not binding upon a court reviewing the issue. *Hyman v. Aiken,* 824 F.2d 1405, 1412 (4th Cir.1987); *Lee v. Hopper,* 499 U.S. 456 (5th Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 633, 42 L.Ed.2d 650

(1974). As a reviewing court, it is proper for us to address the ineffectiveness claims anew, regardless of the findings of the district court.

*Strickland v. Washington* set out the appropriate standard of review for collateral attacks on the basis of a claim of ineffective assistance of counsel. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court set out two requisite components to a successful habeas attack on this ground. A petitioner must show that (1) counsel's performance was defective in that it fell below an objective standard of reasonableness; and (2) petitioner was prejudiced by the deficient performance in that there is a reasonable probability that the outcome would have been different if not for the deficiency. *Id.* at 692–94, 104 S.Ct. at 2067–68. A petitioner must prove both prongs or his claim fails. *Id.* at 697, 104 S.Ct. at 2069.

Becton asserted that counsel was ineffective because he failed to investigate Becton's competency at the time of trial. The question of competency is interrelated with the effective assistance of counsel issue; the failure of counsel to investigate or pursue any defenses regarding Becton's competency at the time of trial or at the time of the commission of the crimes is at the heart of this ineffectiveness claim. *Wood v. Zahradnick,* 430 F.Supp. 107, 109 (E.D.Va. 1977), *aff'd,* 578 F.2d 980 (4th Cir.1978). Failure to adequately investigate the possibility of an insanity defense has been held to fall below the standard of competence despite the deference accorded an attorney's judgment in evaluating the effectiveness of representation. *Hooper v. Garraghty,* 845 F.2d 471, 474 (4th Cir.1988); *Wood v. Zahradnick,* 578 F.2d 980, 982 (4th Cir.1978).

■ Counsel may not have believed that Becton was incompetent. However, a lawyer is not entitled to rely on his own belief about a defendant's mental condition, but instead must make a reasonable investigation. *Wood v. Zahradnick,* 578 F.2d at 982. This court explained that duty in *Wood:*

What [the defendant] had done was so senseless that any lawyer should have sought available expert assistance to explore the possibility that [the defendant] was suffering with a [mental illness]. Though he had no other defense and the trial was certain to result in a conviction unless an insanity defense prevailed, the lawyer did nothing to explore the one avenue which offered a ray of promise.

*Id.*

The facts of *Wood* are very similar to the case at bar. There, Wood had raped and beaten his 67–year–old neighbor. Wood claimed that he did not remember the events because he had taken heroin and had been drinking. Physical evidence left little doubt that he committed the acts. Counsel's notes revealed that the defendant was not always responsive to questions and exhibited withdrawal symptoms from drugs. However, counsel made no investigation into Wood's competency. Had he done so, he would have found that Wood had low I.Q. scores, indicating mild retardation. The district court explained that "facts, which were either known or ascertainable with reasonable diligence by counsel prior to trial, provided a reasonable basis for believing the defenses based on the petitioner's mental capacity might have been plausible." *Wood*, 430 F.Supp. at 110. This court found that failure to investigate to be ineffective assistance of counsel. *Wood*, 578 F.2d at 982.

In the case at bar, Becton alleges that he told counsel that he had been in and out of mental hospitals before his arrest. The prison medical records indicate that he was, in fact, evaluated four different times at two mental hospitals between November 1981 and January 1983. Becton was indicted on the present charges in October 1983. The medical records also show that Becton, like Wood, had a low I.Q. Also like Wood, Becton was charged with raping an elderly woman, and the physical evidence was strong against him. Evidence showed that Becton had come around to visit the victim earlier in the evening. He talked to her momentarily, and she told him to go away. Later that night, Becton climbed through the window as the victim was preparing for

bed and raped her. Afterwards, Becton was seen riding away from the house on his bicycle. Becton's "senseless" actions, like Wood's actions, indicated bizarre behavior in that both men were somewhat friendly with their elderly victims prior to the attacks. *See Wood*, 578 F.2d at 982.

The facts which Becton's counsel knew or could have ascertained with reasonable diligence provided reasonable grounds for him to have questioned Becton's competence as the only possible "ray of promise." However, the record here is devoid of any investigation. Further, Becton's counsel has offered no explanation for why he did not pursue the competency issue, although he did offer an explanation for his failure to appeal in an affidavit requested by the government. Here, as in *Wood*, the defenses based upon Becton's lack of sanity *might* have been plausible, yet none were pursued.

Respondents assert that Becton should not be granted a hearing on the issue of competency because petitioner has not proved that he was incompetent at the time of trial under the test set out in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The *Dusky* test for competence is whether the petitioner had "sufficient present ability to consult with his lawyer with a reasonable degree of understanding...." *Dusky*, 362 U.S. at 402, 80 S.Ct. at 788. However, reliance on *Dusky* is misplaced in the context of an ineffective assistance of counsel case. *Dusky* did not involve a claim of ineffective assistance of counsel, but rather involved only the issue of whether defendant was competent to stand trial. Here, Becton asserts that his counsel rendered ineffective assistance because he failed to investigate whether Becton was, in fact, competent. The focus here is on the conduct of counsel. Had counsel taken reasonable steps to investigate, a hearing could have been held on the issue of Becton's competency, and the *Dusky* standard would have been applied at that time. Instead, no hearing was held, and there is no record of petitioner's

mental capacity either at the time of trial or at the time of the crimes.

■ In addition to proving that counsel performed deficiently, a petitioner must also prove that he was prejudiced by the deficiency in order to succeed on his habeas petition. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. In this case, it is probable that Becton was prejudiced. The record reflects that counsel put forth no evidence at all in Becton's behalf. Had counsel investigated Becton's mental capacity, he might have set forth two defenses. First, he may have been able to prove that Becton was not competent to stand trial. In the alternative, he might have been able to establish that Becton was not guilty by reason of insanity. Either of these defenses would have resulted in a vastly different outcome than the conviction and sentence of 36 years Becton received. However, no defense was available to Becton because of counsel's failure to investigate, and no defense was offered at trial. As a result, Becton was prejudiced by counsel's deficiency. *Compare United States v. Oliver*, 865 F.2d 600, 605 (4th Cir.1989) (petitioner not prejudiced by counsel's ineffectiveness when petitioner pleaded guilty and judge made appropriate Rule 11 findings); *Hooper v. Garraghty*, 845 F.2d at 475 (petitioner not prejudiced when he pleaded guilty and there was no reasonable probability that he would have changed his plea agreement if counsel had gotten psychiatric report). Becton has established that counsel's performance may well have fallen below the level of competence, and that he was likely prejudiced by such deficient performance. Therefore, Becton has presented a colorable claim that counsel was ineffective based on the failure to investigate his competence.

### III.

Becton alleged that counsel was ineffective for a second reason: failure to appeal. In North Carolina, persons convicted of a criminal charge on a plea of not guilty are entitled to appeal the adverse judgment as a matter of right. N.C.Gen.Stat. § 15A–1444(a) (1988). In order for the appeal as of right to be adjudicated in accord with due process of law, the appellant must have the effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985).

This court has addressed a claim of ineffectiveness respecting appeal in *Nelson v. Peyton*, 415 F.2d 1154 (4th Cir.1969), *cert. denied*, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970). In that case, petitioner was convicted of attempted rape and robbery. There was evidence that he requested the opportunity to speak to his counsel after his conviction. One of his attorneys never contacted him again. The other saw him briefly at the jail, while talking to another client. That attorney had no recollection of speaking with petitioner. Petitioner was never told by anyone of his right to appeal. *Id.* at 1156. This court noted that the interim between trial and appeal is a critical time for a defendant "because he must make decisions which may make the difference between freedom and incarceration." *Id.* at 1157. The court concluded that petitioner was denied effective assistance of counsel because he did not know of his right to appeal: "This follows because he did have a right to appeal, and it was the duty of his counsel to advise him of the right and how and when to exercise it." *Id.* at 1156.

*Turner v. North Carolina* is another case involving ineffectiveness regarding appeal. 412 F.2d 486 (4th Cir.1969). There, counsel gave oral notice to the court of his desire to appeal at defendant's request. However, counsel never took any further action in connection with the appeal. This court stated that after conviction,

> when time is an important factor in obtaining appellate review, no one is in better position to insure the indigent defendant of the appeal which he has requested than counsel who has represented him at trial.
>
> After desire to take an appeal is shown by an indigent defendant the very least which counsel must do is inform the defendant of his right to appeal without cost; of the need for a transcript of the

trial proceedings; and of the availability of this transcript without cost. If at this time appointed trial counsel decides that he cannot or will not continue to represent the defendant he must so inform the defendant, in addition to informing him of his right to appointment of other counsel, and of the procedure through which the trial transcript and appeal may be obtained if assistance of counsel is not desired.

*Id.* at 489. This court held that petitioner was denied his right to assistance of counsel due to the inaction and neglect of his attorney. *Id.*

In *Evitts v. Lucey*, the Supreme Court held that respondent received ineffective assistance of counsel when he appealed his conviction, but his counsel failed to file a "statement of appeal" as required by state law. 469 U.S. at 392, 105 S.Ct. at 833. The Court found that petitioner was denied due process of law when he received ineffective assistance of counsel with regard to his appeal. There the Court noted that the appeal is a process whereby the convicted defendant attempts to show that his conviction is unlawful; therefore, an unrepresented defendant is "unable to protect the vital interests at stake." *Id.* at 396, 105 S.Ct. at 836.

In the present case, the record shows that petitioner did not give notice of appeal at trial. Becton's counsel stated: "At this time we do not give notice of appeal; those are instructions from the defendant." However, Becton alleged that he contacted his attorney after his conviction, asking to appeal. The government countered by offering an affidavit of counsel. In it, counsel says:

> While I do not recall whether or not I advised him of his right to appeal, my file is silent on any advice I may have given him along these lines. It is my normal practice to tell all clients convicted that they do have a right to appeal either to the Court of Appeals or the Supreme Court. However, in this case, after having advised him of that right, I would have advised further against appeal for the reason that the evidence

against him was so strong that even in the event a new trial was granted there could be no different outcome in a re-trial.

Counsel candidly admitted that he cannot remember whether or not he advised Becton of his right to appeal.

The district court stated that it could not say that the failure to appeal resulted in a different outcome. However, this court should properly address the issue of ineffectiveness of counsel anew because it is a mixed question of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070. Becton asserted that he asked his attorney to appeal. No affirmative evidence refutes that assertion other than counsel's general statement of his habit. Proper records of counsel might have cleared up this issue; however, none were presented.

The effect of counsel's failure to appeal was that Becton lost his ability to protect his "vital interests at stake." *See Evitts*, 469 U.S. at 396, 105 S.Ct. at 836. He was unable to attempt to demonstrate that his conviction was unlawful through the appellate process. *See id.* For whatever reason, Becton's appeal was not filed. As a result, Becton might well have been prejudiced by his counsel's ineffective assistance. Therefore, Becton has presented a colorable claim of ineffective assistance of counsel based on counsel's failure to appeal.

### IV.

The district court dismissed Becton's habeas petition without an evidentiary hearing as to whether counsel was ineffective. In fact, Becton has never had a hearing on that issue, as all of his motions for relief have been summarily denied. In view of the fact that Becton has presented two colorable constitutional claims of ineffective assistance of counsel, he should have received a hearing on the factual claims at issue. *Ford v. Wainwright*, 477 U.S. 399, 410–11, 106 S.Ct. 2595, 2602–03, 91 L.Ed.2d 335 (1986) (plurality opinion). *See Stockton v. Virginia*, 852 F.2d 740, 745 (4th Cir.1988), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989) (federal

habeas court properly held an evidentiary hearing since the merits of the factual dispute were not resolved in the state hearings). On these facts, we hold that it was error not to have an evidentiary hearing to determine whether counsel was ineffective. Therefore, we vacate the district court's order denying the habeas petition and remand this case to the district court with instructions that the court hold an evidentiary hearing to determine whether Becton's counsel was ineffective due to (1) his failure to investigate Becton's competence and (2) his failure to appeal.

VACATED AND REMANDED.