985 F.2d 553
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Wayne Kenneth DELONG, Petitioner-Appellant,
v.
Charles E. THOMPSON, Warden, Mecklenburg Correctional
Center, Respondent-Appellee.
 No. 92-4000.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 1, 1992
Decided: February 4, 1993
 
 ARGUED: Randal Scot Milch, DONOVAN, LEISURE, ROGOVIN, HUGE & SCHILLER, Washington, D.C., for Appellant.
 Donald Richard Curry, Senior Assistant Atty. Gen., Office of the Attorney General, Richmond, Virginia, for Appellee.
 ON BRIEF: C. Lee Larson, DONOVAN, LEISURE, ROGOVIN, HUGE & SCHILLER, Washington, D.C.; Jana Lavernne Gill, LATHAM & WATKINS, Washington, D.C.; Arthur F. Sampson, III, COUDERT BROTHERS, Washington, D.C.; Steven M. Wellner, Adam Magazine, KIRKLAND & ELLIS, Washington, D.C., for Appellant.
 Before HALL and HAMILTON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Wayne Kenneth DeLong, a Virginia prisoner convicted of capital murder, appeals dismissal of his petition for a writ of habeas corpus. Finding no cause for reversing the district court's judgment, we affirm.
 
 
 2
 * DeLong shot and killed Detective George Ronald Taylor of the Richmond, Virginia, police department on a Richmond street on June 15, 1986. Within a half-hour, police arrested DeLong and charged him with Taylor's murder. A jury convicted DeLong of the crime and sentenced him to death. The Virginia Supreme Court affirmed his conviction and his sentence. DeLong v. Commonwealth, 234 Va. 357, 362 S.E.2d 669 (1987), cert. denied, 485 U.S. 929 (1988).
 
 
 3
 DeLong sought postconviction relief in the Circuit Court for the City of Richmond. In 1989, the state court summarily dismissed most of DeLong's claims but conducted an evidentiary hearing on the issue of ineffective assistance of counsel at the penalty stage of his trial. In an order dated November 3, 1989, the court adopted the respondent's proposed findings of fact and conclusions of law and dismissed DeLong's habeas petition. The Virginia Supreme Court refused DeLong's petition for appeal, and the United States Supreme Court denied certiorari. DeLong v. Thompson, 111 S. Ct. 571 (1990).
 
 
 4
 In March 1991, DeLong filed a petition for a writ of habeas corpus in the Eastern District of Virginia. In September 1991 the district court issued a lengthy opinion which considered and rejected each of DeLong's claims. DeLong v. Thompson, 790 F. Supp. 594 (E.D. Va. 1991).
 
 II
 
 5
 On Sunday, June 15, 1986, while on parole from a 1978 seconddegree murder conviction, DeLong met Gerald William Bradley, Jr., and Charles Lee Bowers, both convicted felons, at a Richmond bar for an afternoon of beer drinking. By driving to Richmond from Virginia Beach with a suspended driver's license while in possession of a loaded .45 caliber handgun, DeLong had violated several conditions of his parole.
 
 
 6
 Later that afternoon, the three men left the bar together in the car DeLong was driving. Around 5:30 p.m., Detective Taylor, driving an unmarked police car with red and blue flashers in the grille, pulled over DeLong's vehicle. Bowers, sitting in the front seat next to DeLong, heard him say that a "cop is pulling me over." Bradley, sitting in the back seat, heard DeLong say that he was"going to have to shoot this nigger."
 
 
 7
 As Detective Taylor approached the driver's window, an eyewitness on the street saw DeLong fire the handgun into Detective Taylor's chest, fatally perforating his esophagus and heart. Both Bradley and Bowers testified that DeLong then threatened to shoot them as he had just shot Detective Taylor.
 
 
 8
 Less than half an hour after the crime, two Henrico County police officers stopped DeLong as he drove on the interstate highway east of Richmond. Upon discovering that his driver's license was suspended, the officers asked him to stand by their police car. They then discovered a .45 caliber handgun protruding from beneath the driver's seat. At trial, a firearms expert testified that the bullet retrieved from Detective Taylor's body had been fired from this gun.
 
 III
 
 9
 DeLong argues that his trial counsel were ineffective due to their failure to present mitigation evidence in the penalty phase of the trial.
 
 
 10
 In order to establish a claim of ineffective assistance of counsel, the claimant must show that the performance of counsel was deficient and that the deficiency prejudiced the claimant by affecting the judgment in the case. Strickland v. Washington, 466 U.S. 668, 687 (1984). It is not necessary to examine counsel's performance to ascertain its adequacy if it is evident that the performance complained of did not prejudice the defendant. Strickland, 466 U.S. at 697. Claims of ineffective assistance of counsel involve mixed questions of law and fact; therefore, we review such questions de novo. Strickland, 466 U.S. at 698; Washington v. Murray, 952 F.2d 1472, 1476 (4th Cir. 1991). Nonetheless, where the state court has conducted a habeas hearing and made findings of fact, federal courts should accept these factual findings unless they lack "even 'fair support' from the record." Marshall v. Lonberger, 459 U.S. 422, 432 (1983); 28 U.S.C. § 2254(d).
 
 
 11
 We also note as a preliminary matter that the state's findings of fact may be adopted from proposed findings of fact submitted by one of the parties where, as here, the state habeas court conducts a thorough and independent review of the proposed findings. Maynard v. Dixon, 943 F.2d 407, 416 n.6 (4th Cir. 1991). Although DeLong objects to the state habeas court's adoption of the proposed findings of fact submitted by the state, he presents no evidence that such a meticulous review did not occur. After reviewing the record, we accept the factual findings of the state habeas court.
 
 
 12
 DeLong first contends that his counsel were ineffective by failing to present mitigating evidence from his family members in the sentencing phase of his trial.
 
 
 13
 Examining this contention under the Strickland standard, we conclude that counsel were not ineffective. DeLong told his lawyers well before his trial that he did not want them to contact his family for any mitigating evidence. Any doubt as to DeLong's determination not to involve his family was resolved when he stated, unprompted, in open court, that it was by his request that his family was not participating. A defendant's desire not to present mitigating evidence does not wholly exempt counsel from conducting a reasonable investigation of potential mitigating evidence. See Thomas v. Kemp, 796 F.2d 1322, 1324-25 (11th Cir. 1986). When, however, the defendant makes such a request, the effort counsel must expend investigating the mitigating evidence to which the defendant has objected may be limited. Bunch v. Thompson, 949 F.2d 1354, 1365 (4th Cir. 1991).
 
 
 14
 Despite DeLong's request, his counsel wrote his father in an attempt to prepare mitigating evidence for the sentencing phase of his trial. DeLong's father responded that neither he nor any other member of the family was willing to testify in his behalf. DeLong now seeks to support his claim of ineffective counsel by referring to testimony of his older sister at the state habeas corpus evidentiary hearing and by affidavits of four other family members tardily filed long after the state proceedings had concluded. On direct examination, DeLong's sister depicted him as a well-behaved youth who was raised in a closely knit, devout family. They lived in an affluent neighborhood, and DeLong was educated at private schools. He attended college but did not graduate. His sister asserted that she would have testified in his behalf if she had been called. The affidavit of his grandmother is in essence similar to his sister's testimony on direct examination. His brothers and another sister acknowledged in their affidavits that when DeLong's father was drunk, he was violent and that when DeLong was drunk, he, too, was violent.
 
 
 15
 On cross-examination DeLong's sister admitted that DeLong had assaulted his father, inflicting an injury requiring sutures. She also conceded that although she knew that DeLong had been arrested she made no effort to attend the trial, nor did she inquire about the trial date. The affidavits suffer from the same weaknesses as the testimony presented by DeLong's sister in the state habeas court. If the affiants had testified at the criminal trial, they would have been subjected to the same cross-examination as DeLong's sister.
 
 
 16
 Counsel's competency must be judged on their representation at the time of trial without the distortion of hindsight prompted by testimony and affidavits given years after the event. See Strickland, 466 U.S. at 689. Judged in this light, DeLong's counsel were not ineffective for deciding, in face of the resistance of DeLong's father and the apathy of his family, that the family would not likely be a source of helpful mitigating evidence. See Bunch, 949 F.2d at 1365. For this reason, DeLong's claim of ineffective counsel fails.
 
 
 17
 Moreover, with respect to the second requirement of Strickland-proof of prejudice-DeLong has not shown that the absence of the family's equivocal testimony was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.
 
 
 18
 DeLong next argues that his counsel's failure to present mitigating medical testimony at his sentencing rises to the level of ineffective assistance. He maintains that his counsel's initial plan to investigate his medical background for the penalty phase of the trial was not implemented and that this failure was not the result of a strategic decision. He argues further that had counsel offered the results of an indepth medical evaluation of DeLong to the jury, the outcome of the sentencing might have been different.
 
 
 19
 The state habeas court found that DeLong protested the presentation of any mitigation based on his mental health and that his professions of lucidity coupled with counsel's concern with the introduction of adverse evidence led his counsel to make a tactical decision not to present such mitigating testimony. In somewhat similar circumstances, we said: "When a seemingly lucid and rational client rejects the suggestion of a psychiatric evaluation and there is no indication of a mental or emotional problem, a trial lawyer may reasonably forego insistence upon an examination. There is no constitutional basis for a rule that would require a psychiatric evaluation in every capital case." Clanton v. Bair, 826 F.2d 1354, 1358 (4th Cir. 1987) (citations omitted). Tested by this standard, counsel's performance did not fall below that of a reasonable attorney.
 
 
 20
 Furthermore, DeLong was not prejudiced by his counsel's decision not to introduce psychiatric testimony. His counsel considered the advantages and disadvantages of such testimony before deciding not to attempt this manner of mitigation. Evidence developed at the state habeas hearing justified their decision. Psychiatric testimony at the habeas hearing offered scant support for mitigation and an abundance of unfavorable opinion concerning DeLong.
 
 
 21
 At the state habeas proceeding, DeLong offered the testimony of two doctors who after examination found him to come from a dysfunctional family, to be a severe drug and alcohol abuser, and to have an antisocial personality disorder making him uncaring about the consequences of his actions on others. They found him to have mild cognitive dysfunction, or mild problems with thinking as it relates to visual information, resulting from head injuries, and to possess an organic personality disorder. Both experts testified that these problems, combined with excessive drug and alcohol consumption on the day of the murder, could have affected DeLong's behavior on that day.
 
 
 22
 Additionally, one of DeLong's experts testified that DeLong has an antisocial personality exacerbated by drug and alcohol abuse. The witness acknowledged that DeLong is not unable to conform his behavior to the requirements of the law and that he uses violence when he thinks he can get away with it. He believed that DeLong is not treatable, and that many of the psychological factors in DeLong's case that are arguably mitigating are equally aggravating.
 
 
 23
 The other expert testified that there was no evidence that DeLong's head injuries were more significant than mild. He stated that DeLong's actions were consistent with "learned behavior"; in other words, his violent behavior had never before resulted in adverse consequences and was therefore reinforcing. The witness concluded that there was no evidence that DeLong wished to rehabilitate himself, and that he was highly likely to commit future acts of violence.
 
 
 24
 The state habeas court ruled that these statements were factually correct, and we find them to be supported by the record. In sum, the psychiatric evidence which DeLong proffers hinges primarily on his being intoxicated at the time of the shooting. When coupled with an organic brain disorder, this combination, DeLong argues, serves to mitigate his culpability for Detective Taylor's murder.
 
 
 25
 The state habeas court found that DeLong had told his lawyers that he was not drunk or otherwise impaired at the time of his offense. Although DeLong did not testify at either his trial or the state habeas hearing, he told his lawyers before trial that a passenger in his car shot Detective Taylor. When a defendant recalls the events surrounding a murder "with such conciseness" that a defense of intoxication is implausible, counsel is not ineffective for not pursuing such a defense. Roach v. Martin, 757 F.2d 1463, 1478 (4th Cir. 1985).
 
 
 26
 DeLong's initial denial of impairment is corroborated. None of the experienced law enforcement officers with whom DeLong came into contact immediately after Detective Taylor's murder considered him to be intoxicated. Consequently, the evidence which DeLong now argues his counsel was remiss for not presenting would have afforded him little support.
 
 
 27
 We conclude that DeLong has established neither deficiency nor prejudice with respect to his counsel's representation regarding their decision not to present psychiatric testimony. DeLong's failure to satisfy the requirements of Strickland, 466 U.S. at 687, forecloses his claim of ineffective counsel on this issue.
 
 
 28
 DeLong also contends that his counsel was ineffective in not presenting evidence on his employment history. Since DeLong nowhere attempts to show that he was prejudiced by this asserted failure, we need not pursue this issue. Strickland, 466 U.S. at 697. Suffice it to say, it is not likely that testimony from his supervisor, a convicted heroin distributor, about DeLong's good conduct in the work place would have altered the outcome of DeLong's sentencing hearing. We cannot conclude that the absence of testimony about his employment rendered the result of his trial unreliable. See Strickland, 466 U.S. at 691.
 
 
 29
 Burger v. Kemp, 483 U.S. 776 (1987), provides precedent for affirming the district court on the issue of ineffective counsel. In that case, as in DeLong's, counsel decided not to present testimony at sentencing from the defendant's family or from a psychiatrist. The Court pointed out that this testimony would have been relevant. Nevertheless, the Court drew a distinction between the issue or relevancy and the issue of ineffective counsel:
 
 
 30
 That issue [of ineffectiveness] is whether counsel acted reasonably in deciding not to introduce the evidence out of apprehension that it would contribute little to his client's chances of obtaining a life sentence while revealing possibly damaging details about his past and allowing foreseeably devastating cross-examination.
 
 
 31
 483 U.S. at 789 n.7. As in DeLong's situation, the evidence that might have been presented was disclosed in Burger's habeas corpus hearing, supplemented by affidavits of persons who asserted that they would have testified at Burger's trial on the question of mitigation. The Supreme Court recognized that this evidence and the information in the affidavits was of mixed value, partially helpful and partially harmful. Under these circumstances, the Court held that counsel's decision not to present mitigating evidence at the sentencing hearing was reasonable, and it denied Burger's claim of ineffective counsel. The reasoning of the Court in Burger fully supports the district court's decision to deny DeLong's claim of ineffective counsel.
 
 IV
 
 32
 DeLong contends that the district court erred by not conducting an evidentiary hearing on his ineffective counsel claim. He complains that the state habeas hearing was not full and fair and that the state judge did not resolve material issues of fact. He relies primarily on Becton v. Barnett, 920 F.2d 1190 (4th Cir. 1990), which found error in the district court's dismissal of a habeas petition without an evidentiary hearing.
 
 
 33
 A federal court must grant an evidentiary hearing to resolve disputed facts unless a state court has granted a full, fair, and adequate hearing. 28 U.S.C. §§ 2254(d)(2) & (6). Becton applied this statute under circumstances quite dissimilar from DeLong's. In Becton, the state habeas court summarily dismissed serious, material allegations of ineffective representation. For this reason, the plain language of the statute required the district court to conduct an evidentiary hearing.
 
 
 34
 DeLong's habeas petition, in contrast, was the subject of a two-day hearing in state court on the issue of ineffective counsel. DeLong was represented by the same counsel who conducted his federal case. DeLong's habeas counsel thoroughly questioned his two trial counsel and eight other witnesses, including DeLong's sister and his two psychiatric experts. The state court fully considered DeLong's claims and adopted the Attorney General's proposed findings and conclusions set forth in a 37-page submission.
 
 
 35
 Our review of the state record, which is reproduced in part in volumes I, III, and IV of the appendix, disclosed that the state habeas proceedings were full, fair, and adequate.
 
 
 36
 DeLong also refers to the family's affidavits to support his claim that the district court erred by not granting him an evidentiary hearing on the charge of ineffective counsel. But DeLong has shown neither cause for his failure to present the affidavits to the state habeas court nor prejudice as required by Keeney v. Tamayo-Reyes, 112 S. Ct. 1715 (1992) (overruling the deliberate bypass standard of Townsend v. Sain, 372 U.S. 293, 317 (1963)). The Supreme Court decided Keeney months after DeLong's federal habeas proceedings, so DeLong's counsel cannot be faulted for not complying with its standard. Nevertheless, remand to afford DeLong an opportunity to prove cause and prejudice is inappropriate because the affidavits from family members were cumulative. They did not differ materially from the testimony of DeLong's older sister. As we previously held, DeLong was not prejudiced by his trial counsel's decision not to have his family testify.
 
 
 37
 The district court did not err by deciding not to conduct an evidentiary hearing on the issue of ineffective counsel.
 
 V
 
 38
 DeLong complains that the prosecutor wrongfully withheld notes of interviews with three eyewitnesses, despite a general pretrial motion for production of all exculpatory information. The prosecutor denied misconduct.
 
 
 39
 This prosecutorial misconduct claim was first raised in the state habeas proceedings. The state habeas court summarily dismissed this claim on its merits, citing United States v. Bagley, 473 U.S. 667 (1985), and Brady v. Maryland, 373 U.S. 83 (1963). The district court also dismissed the prosecutorial misconduct claim, holding that DeLong had failed to state sufficiently the content of the notes. DeLong, 790 F. Supp. at 612.
 
 
 40
 DeLong offers no explanation for his failure to make any effort to obtain the interview notes during the state habeas proceedings in order to determine their materiality. This failure is fatal to his claim. See Maynard v. Dixon, 943 F.2d 407, 412 (4th Cir. 1991). Without more than a general allegation regarding the notes, DeLong has failed to show that the notes were material, and he has not established any infringement of the due process clause. See Bagley, 473 U.S. at 67478.
 
 VI
 
 41
 DeLong assigns several other errors to the district court's dismissal of his habeas petition. The district court thoroughly examined each of DeLong's assignments of error and found them to be either meritless or procedurally defaulted. DeLong's remaining claims, and the references to the district court's opinion dismissing them, are:
 
 
 42
 Trial counsel were ineffective in handling the change of venue issue. 790 F. Supp. at 601-02.
 
 
 43
 Trial counsel ineffectively conducted voir dire. 790 F. Supp. at 602-04.
 
 
 44
 Trial counsel ineffectively investigated DeLong's case prior to the guilt or innocence phase of the trial. 790 F. Supp. at 611-12.
 
 
 45
 Trial counsel ineffectively failed to make timely objections at trial, including objections to testimony regarding DeLong's mental health. Additionally, the trial court's admission of the competency testimony violated DeLong's Fifth and Sixth Amendment rights. 790 F. Supp. at 608-10.
 
 
 46
 Trial counsel ineffectively prepared, proffered, and argued adequate jury instructions. 790 F. Supp. at 610-11.
 
 
 47
 Trial counsel ineffectively failed to pursue valid claims on appeal. 790 F. Supp. at 612.
 
 
 48
 The pretrial identification was prejudicial. 790 F. Supp. at 613-14.
 
 
 49
 The Commonwealth failed to establish all of the elements of capital murder. 790 F. Supp. at 614-15.
 
 
 50
 Counsel failed to prepare proper jury instructions. 790 F. Supp. at 610-11.
 
 
 51
 DeLong is entitled to an additional evidentiary hearing and to funds for a private investigator. 790 F. Supp. at 615-17.
 
 
 52
 DeLong now argues that ineffectiveness of counsel caused the default on some of his claims.
 
 
 53
 Inasmuch as DeLong did not assert ineffectiveness of counsel as cause for the default in the state habeas hearing, he cannot raise the issue initially in federal court. See Murray v. Carrier, 477 U.S. 478, 489 (1986). We therefore affirm the district court's dismissal of several claims as procedurally defaulted. These claims, and the references to the district court's opinion dismissing them, are:
 
 
 54
 DeLong's trial was unfair due to pretrial prejudice. 790 F. Supp. at 599-601.
 
 
 55
 The jury instructions at the penalty phase were confusing and led to an arbitrary sentence. 790 F. Supp. at 614.
 
 
 56
 The jury instructions at the sentencing phase violated DeLong's right to due process. 790 F. Supp. at 614.
 
 
 57
 The trial court improperly admitted evidence of DeLong's criminal record at the penalty phase. 790 F. Supp. at 614.
 
 
 58
 The prosecutor's closing argument at the penalty phase was improper. 790 F. Supp. at 614.
 
 
 59
 The trial court erred when it excluded eight jurors based on their opposition to the death penalty. 790 F. Supp. at 612-13.
 
 
 60
 The Virginia death penalty statute is unconstitutional on its face and as applied. 790 F. Supp. at 615.
 
 
 61
 The death penalty is arbitrarily and discriminatorily applied in Virginia. 790 F. Supp. at 615.
 
 
 62
 The Virginia Supreme Court fails to review death penalty decisions adequately or to conduct a proportionality review of such decisions as constitutionally required. 790 F. Supp. at 615.
 
 
 63
 After reviewing the record, we hold that the district court's examination of each of DeLong's claims is sufficient and that its finding that the claims are either meritless or procedurally defaulted is correct.
 
 AFFIRMED