993 F.2d 1541
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Arch A. MOORE, Jr., Defendant-Appellant.
 No. 92-6419.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 2, 1993
Decided: May 26, 1993
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Richard L. Williams, Senior District Judge, sitting by designation. (CR-90-78)
 Argued: Stephen Vincent Wehner, Santarelli, Smith & Carroccio, Washington, D.C., for Appellant.
 Larry Robert Ellis, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 On Brief: Richard O. Wolf, Santarelli, Smith & Carroccio, Washington, D.C., for Appellant.
 Michael W. Carey, United States Attorney, Charleston, West Virginia, for Appellee.
 S.D.W.Va.
 AFFIRMED.
 Before RUSSELL, PHILLIPS, and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Arch Moore, Jr. appeals from an order of the district court denying his motion for a writ of habeas corpus. In support of his motion to vacate pursuant to 28 U.S.C. § 2255, Moore has claimed that his sentence violates his federal constitutional rights because he received ineffective assistance of counsel when pleading guilty to the underlying charges. Moore's defense attorney at that time was William Hundley.
 
 
 2
 Moore retained Hundley in November 1989 to represent him in an ongoing federal investigation being conducted by a grand jury in Charleston, West Virginia. Hundley, an experienced criminal defense attorney,[1] had successfully represented Moore in two previous matters.[12] Moore himself is also a member of the bar, and maintained a private law practice prior to serving three terms as governor of West Virginia.
 
 
 3
 As part of his representation of Moore during the investigation, Hundley appeared with him for two sworn statements Moore agreed to give government investigators. In those statements, Moore admitted to federal investigators that he had conducted an illegal or "underground" cash campaign in support of his successful bid for governor in 1984. Hundley also talked to lawyers of several Moore "loyalists," including his 1984 and 1988 campaign managers and two members of his campaign finance committee, and discovered that they were cooperating with the government and giving evidence against Moore. In addition, Hundley learned that several other witnesses had reported to government investigators that they had given cash to Moore as part of the illicit fundraising scheme.
 
 
 4
 In both of his sworn statements to government agents, Moore denied ever discussing the investigation with John Leaberry, his 1988 campaign finance chair, and further denied recently meeting with Leaberry. In fact, however, Moore had met with Leaberry on January 8, 1990, only two days before Moore gave his first sworn statement to federal investigators. Unbeknownst to Moore, his meeting with Leaberry was recorded. The recording disclosed that Moore's primary purpose in meeting with Leaberry was to discuss the investigation and to plan what they would tell investigators about certain subjects. Moore encouraged Leaberry to lie about Moore's receipt of cash during the 1988 campaign and promised Leaberry he would do the same.
 
 
 5
 On April 9, 1990, after Moore's second sworn statement was completed, prosecutors told Hundley of the Leaberry tapes and of the fact that Paul Kizer, a West Virginia coal operator from whom Moore, while governor, had received $500,000, was cooperating in the investigation. Hundley confronted Moore with the new evidence against him and learned for the first time from Moore that a retainer agreement between Kizer and Moore, which had been relied upon as evidence of the legitimacy of Kizer's sizable payment to Moore, had been fabricated.
 
 
 6
 On April 11, 1990, Hundley himself reviewed the Leaberry tapes. Thereafter he began plea discussions with Moore and the United States. Hundley rejected the government's first offer to allow Moore to dispose of the case against him by pleading to a RICO charge. Eventually, Hundley strongly recommended that Moore accept a plea agreement proposed by Hundley wherein he would plead guilty to five felonies: mail fraud, extortion, obstruction of justice, and two tax charges. He told Moore that a jail term was inevitable under the one count covered by the Sentencing Guidelines, but that they would attempt to obtain probation on the four remaining counts. He also informed Moore that the government would agree not to seek restitution of the payment Moore received from Kizer.
 
 
 7
 On April 12, 1990, Moore signed the written plea agreement; and, on May 8, 1990, he entered guilty pleas to each of the five felony counts. On June 27, 1990, Hundley filed a motion to withdraw each of the guilty pleas on Moore's behalf. On July 9, 1990, the district court heard argument and accepted affidavits in support of and in opposition to that motion and denied the motion. The next day, the district court sentenced Moore to six months on Count One; five years on Count Two; two years on Count Three; two years on Count Four; and ten months on Count Five. The sentences imposed on the first four counts were to run concurrently. The sentence imposed on Count Five-the only guidelines charge-was to run consecutively to the other sentences. Moore began serving his sentence on August 7, 1990.
 
 
 8
 In pronouncing sentence, the district court informed Moore that, with respect to his sentences for the four non-guidelines counts, he was eligible immediately for parole. After the sentencing hearing, Moore discussed the meaning of "immediate eligibility" with Hundley. Hundley and his law partner, Larry Gondelman, who had assisted Hundley in representing Moore at the plea withdrawal hearing and the sentencing hearing, informed Moore that, while he would be immediately eligible, he would not necessarily be released immediately after he had served his time on the one guidelines sentence. They explained to Moore that the ultimate decision would be made by the parole board. They discussed with Moore the possibility of hiring Cecil McCall, an expert in the area, to consult with them in an effort to estimate accurately what Moore's likely parole date would be.
 
 
 9
 Although McCall was not retained, Moore did hire Hundley to represent him before the parole board at Federal Prison Camp Maxwell, Maxwell Air Force Base, Montgomery, Alabama. Hundley appeared before the parole board there on Moore's behalf. Moore also retained Hundley to represent him in the civil lawsuit filed against him by the State of West Virginia and in the direct appeal of his convictions to this court.
 
 
 10
 Moore filed the present petition seeking a writ of habeas corpus with the United States District Court for the Southern District of West Virginia on July 31, 1991. Moore alleged that Hundley had ineffectively assisted him by failing to investigate fully the government's case against him and by misinforming him about several, allegedly deciding factors causing him to plead guilty, namely parole eligibility, possible sentence, the potential civil consequence of his pleas, and his ability to withdraw his pleas once entered.
 
 
 11
 The district court held an evidentiary hearing on January 7, 1992. In support of his motion, Moore and his wife testified and he also submitted several affidavits and exhibits. The government called Hundley, Gondelman, and John Kuklar, the Probation Officer who prepared Moore's pre-sentence report. On February 24, 1992, the district court denied Moore's motion after concluding that Moore had failed to prove that the level of Hundley's service fell below an objective standard of reasonableness and that he would have pled not guilty but for Hundley's advice. We review the district court's findings of fact supporting its ruling for clear error. If the court found any facts which might support a Sixth Amendment claim, we would review de novo its ultimate conclusion that the Sixth Amendment was not violated.
 
 
 12
 In moving to vacate his conviction and sentence under 28 U.S.C. § 2255, Moore bore the burden of proving his allegation of ineffective assistance of counsel by a preponderance of the evidence. See Vanater v. Boles, 377 F.2d 898 (4th Cir. 1967); accord Polizzi v. United States, 926 F.2d 1311, 1321 (2nd Cir. 1991). The Supreme Court has established a two-prong standard for claims of ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668 (1984); Hill v. Lockhart, 474 U.S. 52 (1985) (adapting the Strickland standard to claims involving guilty pleas). Under that two-prong standard, Moore first must have demonstrated that his counsel's representation fell below "an objective standard of reasonableness" given "prevailing professional norms." Strickland, 466 U.S. at 687-688; see also Becton v. Barnett, 920 F.2d 1190, 1192 (4th Cir. 1990). Specifically, Moore
 
 
 13
 must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance ... [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
 
 
 14
 Strickland, 466 U.S. at 690.
 
 
 15
 After having proven incompetent performance by counsel, Moore would have to establish that he was prejudiced by such defective performance; that is, he must prove "a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Becton, 920 F.2d at 1192. Only if both of those elements are established can it be concluded that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial [here, the proceeding] cannot be relied on as having produced a just result." United States v. Di Tommaso, 817 F.2d 201, 215 (2nd Cir. 1987); cf. Strickland, 466 U.S. at 687 (stating that the benchmark for an ineffective assistance of counsel claim is whether there was "a breakdown in the adversary process that renders the result unreliable").
 
 
 16
 An additional consideration in reviewing the advice of counsel with respect to a guilty plea is the effect of the Rule 11 proceeding. The Supreme Court has concluded that the Rule 11 hearing by design acts as a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); cf United States v. Lambey, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc ) ("If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding.")
 
 
 17
 Moore's first claim of error is the alleged failure of Hundley to investigate and raise defenses. However, the record supports the district court's conclusion that Hundley was well aware of the scope and strength of the government's case against Moore at the time he advised Moore to enter the plea. While present counsel may disagree with the strategy advanced by Hundley, Hundley's performance was objectively reasonable and certainly well within Strickland 's requirements. Moreover, Moore has failed to demonstrate that he has been prejudiced by any alleged failure on the part of Hundley to develop legal defenses or to discover relevant evidence. None of the possible legal strategies Moore has raised on appeal are of sufficient weight to have caused Moore to change his plea. And Moore's contention that Hundley failed to discover critical evidence is rather disingenuous, given that the evidence (such as the content of the tapes) was within the personal knowledge of Moore. Consequently, it is difficult to imagine how failing to uncover such evidence could prove irresponsible professional conduct here. The district court's conclusion was not clearly erroneous.
 
 
 18
 Similarly, the district court's conclusion that, contrary to Moore's assertions, Hundley did not misinform Moore about his parole eligibility does not appear to be incorrect. Hundley did inform Moore that he could possibly receive parole on the first four counts, but stated that such a result would be a target, not an immediate certainty. Moreover, based on the information contained in the plea agreement and his colloquy with the judge at his Rule 11 hearing, Moore should have known at the time he pleaded guilty that the total sentence could be as high as 36 years and that the final sentence was within the sole discretion of the court. Finally, we have held that"[a]n attorney's 'bad guess' as to sentencing does not justify the withdrawal of a guilty plea and is no reason to invalidate a plea." See Little v. Allsbrook, 731 F.2d 238, 241 (4th Cir. 1984) (holding that a defendant's alleged expectations of parole did not render his plea involuntary).
 
 
 19
 Moore next has challenged Hundley's advice on the grounds that Hundley mistakenly informed him that he could withdraw his guilty plea once entered. However, the advice Moore has pointed to was offered after he entered his pleas. Thus, the advice could not have affected Moore's decision to enter the pleas. Additionally, Moore admitted at the evidentiary hearing that he could not be sure that correct advice as to the ease or difficulty of withdrawing his pleas would have altered his decision to plead guilty.
 
 
 20
 Moore also has asserted that Hundley gave him bad advice with respect to possible civil liability for his activities covered by the counts in the plea agreement. The district court found that Hundley never told Moore that entering a guilty plea would forestall all civil liability, and that, at most, Hundley only discussed with Moore the possible direct liability Moore might face as a result of the pleas. The government had assured Hundley that it would not seek restitution of the $500,000 extorted from Kizer. But, when he entered his guilty pleas, Moore was told that the government could not promise protection from state proceedings, and Moore twice replied that he understood that fact. Accordingly, we do not find clear error in the district court's finding that Hundley gave Moore correct advice regarding possible liability and that, further, Moore failed to demonstrate that he would not have pled guilty but for the advice.
 
 
 21
 Moore's final challenge to the legal assistance provided by Hundley has centered on the Rule 11 hearing. Moore has argued that the protection afforded by Rule 11 was subverted by Hundley's conversation with him during the proceeding and by Hundley's failure to object to the procedure followed by the district court in conducting the Rule 11 hearing.
 
 
 22
 Both challenges to the Rule 11 hearing are meritless. In the original Moore case, we concluded that Moore "was simply not convincing in claiming that the Rule 11 plea was not knowing and voluntary." United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). Moore's newest challenge to his pleas still does not convince us that Moore, an experienced lawyer and three-term governor, was" coerced" into pleading guilty by Hundley's "coaching" during the Rule 11 hearing. Nor do we find any merit in Moore's challenge to the district court's ordering of the Rule 11 proceeding. Moore fails to cite authority for the proposition that a factual basis must proceed the tender of pleas at a Rule 11 hearing. In addition, the order did not influence his plea, as he himself admitted in the Rule 11 hearing when he stated after the factual basis was offered, that there was nothing about it which would affect his pleas.
 
 
 23
 In conclusion, the district court did not err when it concluded that Moore failed to meet his burden of proof under § 2255. Accordingly, its decision should be
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 After being admitted to the practice of law in December 1950, Hundley joined the Justice Department and served as head of its Organized Crime Section from 1958 until he left the Department in 1964. After leaving the Justice Department, he established and conducted a private practice consisting almost exclusively of federal white-collar criminal defense
 
 
 [2]
 Moore had retained Hundley on two other occasions. In the early 1970's Hundley was retained to represent Moore in a criminal tax investigation. No charges were brought against Moore as a result of that investigation. Hundley was again retained by Moore as his Washington counsel in a matter that resulted in Moore being indicted, tried and acquitted of one count of extortion under the Hobbs Act